(No. 105767.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appel-
lee, v. RICHARD HODGES, Appellant.

*Opinion filed July 15, 2009.*

2

Michael J. Pelletier, State Appellate Defender, Patricia Unsinn, Deputy Defender, and Patrick F. Cassidy, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.

Lisa Madigan, Attorney General, of Springfield, and Anita M. Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Alan J. Spellberg and Michele Grimaldi Stein, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Kilbride and Burke concurred in the judgment and opinion.

Justice Garman concurred in part and dissented in part, with opinion, joined by Justices Thomas and Karmeier.

## OPINION

Following a jury trial, defendant, Richard Hodges, was convicted of first degree murder, aggravated dis-

charge of a firearm, and unlawful use of a weapon by a felon. The circuit court of Cook County sentenced him to 70 years' imprisonment. On direct appeal, the appellate court affirmed defendant's convictions and sentences. *People v. Jackson*, Nos. 1—03—2233, 1—03—3099, 1—03—3216 cons. (2005) (unpublished order under Supreme Court Rule 23).[1] Defendant thereafter filed a *pro se* petition for relief under the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122—1 *et seq.* (West 2006)). The circuit court summarily dismissed the petition as frivolous and patently without merit, and the appellate court affirmed. No. 1—06—0902 (unpublished order under Supreme Court Rule 23). We granted defendant's petition for leave to appeal. 210 Ill. 2d R. 315. For the reasons that follow, we reverse the judgment of the appellate court.

## I. BACKGROUND

Defendant's convictions stemmed from a shooting incident that occurred around 1 a.m. on January 20, 2001, at a gas station on Chicago's West Side. According to the evidence adduced at trial, defendant and his nephews, Toniac Jackson and David Jackson, arrived at the gas station in a black Geo Tracker shortly after 1 a.m. At about the same time, the victim, Christopher Pitts, and several of Pitts's friends, including Marquis Scales, arrived at the gas station in a red van. Pitts got out of the van and walked to the gas station's cashier's window, where he saw Toniac Jackson. Following an argument between the two men, who were members of the same gang, Pitts turned and ran around the corner of the gas station building and then behind the building. Toniac began chasing Pitts, and defendant joined in the

---

[1]Defendant's direct appeal was consolidated with those of codefendants Toniac Jackson and David Jackson, defendant's nephews. The codefendants are not parties to this appeal.

chase. Toniac fired a 10-millimeter handgun at Pitts, and defendant fired shots in Pitts's direction with a nine-millimeter handgun. Pitts was later found dead in the street about a quarter-block from the gas station, with six gunshot wounds to the back of his head and body. No gun was recovered from Pitts's body, and the State's occurrence witness testified that Pitts was unarmed.

Approximately 24 cartridge cases were recovered from various locations at the scene. Some were nine millimeter, some 10 millimeter, and some .25 caliber. Seven nine-millimeter cases were found near the victim's body, along with two fired bullets, which were determined to be nine millimeter as well. The .25-caliber cases were fired from a handgun subsequently recovered by police which apparently belonged to defendant's codefendant, David Jackson. Police did not recover a nine-millimeter gun or a 10-millimeter gun. However, the nine-millimeter cartridge cases found at the scene were all fired from the same nine-millimeter weapon, and the 10-millimeter cases were fired from the same 10-millimeter gun.

Defendant testified that he shot toward Pitts in self-defense, after seeing and hearing gunfire coming from Pitts's direction. Defendant also testified that he saw gunfire coming from the van. Defendant denied trying to shoot Pitts.

Defense counsel argued self-defense and second degree murder, and the jury was instructed as to each of these defenses. The State urged the jury to reject self-defense and second degree murder, emphasizing that Pitts was unarmed—"[t]here was no weapon recovered from Christopher Pitts"—and that the only cartridge cases recovered from the scene were of the same caliber as the weapons used by defendant and his codefendants—nine millimeter, 10 millimeter, and .25 caliber.

The jury found defendant guilty of first degree murder (720 ILCS 5/9—1(a)(1) (West 2002)), aggravated

discharge of a firearm (720 ILCS 5/24—1.2(a)(2) (West 2002)), and unlawful use of a weapon by a felon (720 ILCS 5/24—1.1(a) (West 2002)). On June 20, 2003, the circuit court sentenced defendant to 40 years' imprisonment on the murder conviction, with an additional 20 years for personally discharging a firearm during the commission of the murder; 10 years' imprisonment for aggravated discharge of a firearm, to be served consecutively to the murder sentence; and 5 years for unlawful use of a weapon, to be served concurrently; for an aggregate sentence of 70 years' imprisonment.

On direct appeal, the appellate court affirmed defendant's convictions and sentences. *People v. Jackson*, Nos. 1—03—2233, 1—03—3090, 1—03—3216 cons. (2005) (unpublished order under Supreme Court Rule 23). This court denied defendant's petition for leave to appeal.

In January 2006 defendant filed a *pro se* petition for relief under the Act, along with a motion to proceed *in forma pauperis* and to appoint counsel. In his postconviction petition, defendant alleged that his trial counsel was ineffective for failing to produce evidence that would have supported his claim of self-defense. Specifically, defendant alleged, among other things, that counsel failed to investigate or interview three potential witnesses whose testimony would have corroborated defendant's theory. Defendant alleged that two of these witnesses, Marquis Scales and Dontay Sanders, would have testified that on the night of the shooting, they arrived at the gas station in the same van as Pitts and knew that Pitts was armed with a gun. Defendant further stated that he told his trial counsel about a man he met named Michael Glasper who was at the gas station the night of the shooting, saw Pitts with a gun, and was willing to testify on defendant's behalf. Defendant alleged that these witnesses would have corroborated his claim of

self-defense, and he argued that, because of counsel's incompetence, the jury "did not get a chance to hear any of this evidence." According to defendant, if counsel had provided effective assistance, the verdict undoubtedly would have been different.

Defendant also alleged that trial counsel was aware that the police had actually recovered 45 to 50 shell casings from the scene—not just the 24 presented at trial—including casings from weapons of different calibers than those used by defendant and his codefendants. Defendant referred to an alleged police report signed by Detective Edward Cunningham which included this information. The report was not attached to defendant's petition, but defendant explained the steps he took to obtain a copy. Defendant asserted that he spoke to a person in the medical examiner's office who confirmed the existence of a report indicating .22- and .45-caliber casings had been recovered from the scene, but told him he would have to file a Freedom of Information Act request to get a copy, which he did. Defendant also spoke to his counsel on direct appeal, who contacted the medical examiner's office but was told that documents could not be released without a court order or subpoena. Defendant filed a request for a court order to secure the report, which the circuit court denied.

Attached to defendant's petition were the signed affidavits of Glasper, Scales and Sanders. Glasper's affidavit stated that in July 2002, he and defendant were cell mates at the Cook County jail, where Glasper was being held on a charge of first degree murder. While Glasper and defendant were discussing their cases with each other, Glasper realized that he was familiar with the circumstances of defendant's case. Glasper stated in his affidavit that he had been driving near the gas station the night of the shooting and heard gunshots. He drove to the scene, saw someone lying on the ground,

parked his car in the gas station, walked toward a "small crowd" of people, and saw a bystander pick up a black handgun and "rush[ ] off." Glasper stated that he agreed to testify on defendant's behalf, but defense counsel never contacted him.

Scales stated in his affidavit that around 1 a.m. the night of the shooting he was in a van with Pitts and five companions.[2] When the van stopped for gas, Pitts and two others got out of the van to buy something to drink. Minutes later, Scales heard gunshots and ducked down in his seat in the van as his friend "Ant" (Anthony Brown) drove the van out of the gas station. When they returned to the gas station to pick up their friends, Scales saw someone lying on the ground. Scales then saw a bystander pick up a black handgun from the area where the person was lying and walk away. Scales stated that he and "Ant" got out of the van and saw that it was Pitts lying on the ground, and Scales said, "that guy just took Chris['s] gun." According to Scales, the police arrived "several minutes later."

The content of Sanders' affidavit was essentially the same as that of Scales, with one addition. Sanders stated that when Pitts got out of the van, he took his gun with him "because it was very late and [there's] always something happening around in this area."

The circuit court summarily dismissed defendant's petition as frivolous and patently without merit, and the appellate court affirmed (No. 1—06—0902 (unpublished order under Supreme Court Rule 23)).

## II. ANALYSIS

In this appeal, the parties dispute whether the circuit court should have summarily dismissed defendant's post-

---

[2]James Wilson, the State's occurrence witness, testified at trial that he and Scales, among others, were in the van with Pitts the night of the shooting.

conviction petition alleging ineffective assistance based on counsel's failure, among other things, to investigate and present testimony from witnesses who would have corroborated defendant's theory of defense. Our review of the circuit court's dismissal of defendant's postconviction petition is *de novo. People v. Edwards*, 197 Ill. 2d 239, 247 (2001); *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998); *People v. Torres*, 228 Ill. 2d 382, 394 (2008).

The Act provides a method by which persons under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. See 725 ILCS 5/122—1 *et seq.* (West 2006). Proceedings under the Act are commenced by the filing of a petition in the circuit court in which the original proceeding took place. *People v. Rivera*, 198 Ill. 2d 364, 368 (2001). Section 122—2 of the Act requires that a postconviction petition must, among other things, "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122—2 (West 2006). With regard to this requirement, a defendant at the first stage need only present a limited amount of detail in the petition. *People v. Delton*, 227 Ill. 2d 247, 254 (2008); *People v. Torres*, 228 Ill. 2d 382, 394 (2008). Because most petitions are drafted at this stage by defendants with little legal knowledge or training, this court views the threshold for survival as low. *Delton*, 227 Ill. 2d at 254; *Torres*, 228 Ill. 2d at 394. In fact, we have required only that a *pro se* defendant allege enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act. See *People v. Porter*, 122 Ill. 2d 64, 74 (1988) (stating that only a "gist" of a constitutional claim is needed at this stage). Thus, in our past decisions, when we have spoken of a "gist," we meant only that the section 122—2 pleading requirements are met, even if the petition lacks formal legal arguments or citations to legal authority.

However, our recognition of a low threshold at this stage does not mean that a *pro se* petitioner is excused from providing any factual detail at all surrounding the alleged constitutional violation. Section 122—2 also provides that "[t]he petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122—2 (West 2006). The purpose of the "affidavits, records, or other evidence" requirement is to establish that a petition's allegations are capable of objective or independent corroboration. *Delton*, 227 Ill. 2d at 254, citing *People v. Hall*, 217 Ill. 2d 324, 333 (2005), citing *People v. Collins*, 202 Ill. 2d 59, 67 (2002). "Thus, while a *pro se* petition is not expected to set forth a complete and detailed factual recitation, it must set forth some facts which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent." *Delton*, 227 Ill. 2d at 254-55.

A postconviction proceeding not involving the death penalty contains three distinct stages. *Edwards*, 197 Ill. 2d at 244; *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). At the first stage, the circuit court must, within 90 days of the petition's filing, independently review the petition, taking the allegations as true, and determine whether "the petition is frivolous or is patently without merit." *Edwards*, 197 Ill. 2d at 244; 725 ILCS 5/122—2.1(a)(2) (West 2006). If the court determines that the petition is either frivolous or patently without merit, the court must dismiss the petition in a written order. 725 ILCS 5/122—2.1(a)(2) (West 2006). If the court does not dismiss the petition as frivolous or patently without merit, then the petition advances to the second stage, where counsel may be appointed to an indigent defendant (725 ILCS 5/122—4 (West 2006)) and where the State is allowed to

file a motion to dismiss or an answer to the petition (725 ILCS 5/122—5 (West 2006)).[3]

As we explained, our use of the term "gist" describes what the defendant must allege at the first stage; it is not the legal standard used by the circuit court to evaluate the petition, under section 122—2.1 of the Act, which deals with summary dismissals. Under that section, the "gist" of the constitutional claim alleged by the defendant is to be viewed within the framework of the "frivolous or *** patently without merit" test. Section 122—2.1 provides, in pertinent part: "If the petitioner is sentenced to imprisonment and the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order ***." 725 ILCS 5/122— 2.1(a)(2) (West 2006). Thus, under the Act, a petition which is sufficient to avoid summary dismissal is simply one which is *not* frivolous or patently without merit.

Neither "frivolous" nor "patently without merit" is defined in the Act. This court attempted to define the standard for avoiding summary dismissal in *People v. Boclair*, 202 Ill. 2d 89, 101 (2002), where we cited *Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967), in defining "frivolous." Under *Anders*, "legal points arguable on their merits" are "not frivolous." *Anders*, 386 U.S. at 744, 18 L. Ed. 2d at 498, 87 S. Ct. at 1400. In keeping with this definition, we hold today that a *pro se* petition seeking postconviction relief under the Act for a denial of constitutional rights may be sum-

---

[3]At the second stage, the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *Edwards*, 197 Ill. 2d at 246, citing *Coleman*, 183 Ill. 2d at 381. If no such showing is made, the petition is dismissed. If, however, a substantial showing of a constitutional violation is set forth, the petition is advanced to the third stage, where the circuit court conducts an evidentiary hearing (725 ILCS 5/122—6 (West 2006)). *Edwards*, 197 Ill. 2d at 246.

marily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact. This definition has been used in Illinois in other contexts. See 735 ILCS 5/22—105(b) (West 2006) (defining frivolous pleading as one which "lacks an arguable basis either in law or in fact," in statute providing that prisoner whose postconviction petition is specifically found by a court to be frivolous is responsible for filing fees and actual court costs); 155 Ill. 2d R. 137 (providing for sanctions aimed at deterring frivolous suits or pleadings "without any basis in law" (*Pole Realty Co. v. Sorrells*, 84 Ill. 2d 178, 184 (1981) (stating purpose of statutory precursor of Rule 137))); 155 Ill. 2d R. 375(b) (defining frivolous appeal as one which is "not reasonably well grounded in fact and not warranted by existing law" or good-faith argument for "modification *** of existing law").

Moreover, this definition of the phrase "frivolous or patently without merit" is supported by case law from the federal courts in the area of *habeas corpus*, which provides collateral relief similar to that under the Act. We note that this court has in the past relied on *habeas* case law in interpreting and applying the Act. See, *e.g.*, *People v. Flores*, 153 Ill. 2d 264, 278-79 (1992) (relying on *McCleskey v. Zant*, 499 U.S. 467, 113 L. Ed. 2d 517, 111 S. Ct. 1454 (1991), a federal *habeas* case, in defining relevant terms in the "cause and prejudice" test for filing successive postconviction petitions). Our reliance on such case law is particularly apt in this instance because the General Assembly patterned section 122—2.1 of the Act after the federal *in forma pauperis* statute, 28 U.S.C. §1915. See 83d Ill. Gen. Assem., House Proceedings, June 21, 1983, at 93 (statements of Representative Mc-Cracken) ("It's important to note that this is patterned after a federal law and is consistent with that practice, 28 U.S.C., 1915").

We note that certain federal provisions, including the *in forma pauperis* statute, authorize the dismissal of actions seeking federal *habeas corpus* relief as frivolous. The *in forma pauperis* statute, which allows *habeas* litigants, among others, to proceed *in forma pauperis* if they meet certain requirements (see *Neitzke v. Williams*, 490 U.S. 319, 324, 104 L. Ed. 2d 338, 346, 109 S. Ct. 1827, 1831 (1989)), provides, similar to section 122—2.1(a)(2) of the Act, that "the court shall dismiss the case at any time if the court determines that *** the action or appeal *** is frivolous or malicious *** [or] fails to state a claim on which relief may be granted" (28 U.S.C. §1915(e)(2) (2006)). Because section 1915 did not define "frivolous," the federal courts were left with the task of "[a]rticulating [its] proper contours." *Neitzke*, 490 U.S. at 324-25, 104 L. Ed. 2d at 346-47, 109 S. Ct. at 1831.

The United States Supreme Court has defined a frivolous claim in the section 1915 context as one which "lacks an arguable basis either in law or in fact." *Neitzke*, 490 U.S. at 325, 104 L. Ed. 2d at 347, 109 S. Ct. at 1831-32.[4] According to the Court, such claims include those "based on an indisputably meritless legal theory" as well as claims "whose factual contentions are clearly baseless," *e.g.*, "claims describing fantastic or delusional scenarios." *Neitzke*, 490 U.S. at 327-28, 104 L. Ed. 2d at 348, 109 S. Ct. at 1833.[5]

---

[4]*Neitzke* is a 42 U.S.C. §1983 case. However, *Neitzke*'s interpretation of "frivolous" applies in *habeas* cases involving dismissal for frivolity under section 1915. See *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993) (*habeas* case) (citing interpretation of "frivolous" in *Denton v. Hernandez*, 504 U.S. 25, 31, 118 L. Ed. 2d 340, 349, 112 S. Ct. 1728, 1733 (1992), which quoted *Neitzke*); *Weeks v. Jones*, 100 F.3d 124, 127 (11th Cir. 1996) (*habeas* case) (citing *Neitzke*'s interpretation of "frivolous").

[5]"[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incred-

14

Moreover, an action seeking federal *habeas* relief may be dismissed as frivolous under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules). Under Habeas Rule 4, as under the Act (see *Gaultney*, 174 Ill. 2d at 418; 725 ILCS 5/122—5 (West 2006)), summary dismissal occurs prior to requiring a response from the State.[6]

The Advisory Committee Note to Habeas Rule 4 states, in relevant part:

"It has been suggested that an answer should be required in every habeas proceeding, taking into account the usual petitioner's lack of legal expertise ***. However, *** it is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Habeas Rule 4, Advisory Committee Note.

A year after the adoption of the relevant Advisory Committee Note, the United States Supreme Court, in

---

ible. *** An *in forma pauperis* complaint may not be dismissed, however, simply because the court finds the plaintiff's allegations unlikely. Some improbable allegations might properly be disposed of on summary judgment, but to dismiss them as frivolous without any factual development is to disregard the age-old insight that many allegations might be 'strange, but true; for truth is always strange, Stranger than fiction.' Lord Byron, Don Juan, canto XIV, stanza 101 (T. Steffan, E. Steffan & W. Pratt eds. 1977)." *Denton*, 504 U.S. at 33, 118 L. Ed. 2d at 350, 112 S. Ct. at 1733-34. *Denton*, like *Neitzke*, is a 42 U.S.C. §1983 case.

[6]Habeas Rule 4 provides, in pertinent part:

"The clerk must promptly forward the petition to a judge under the court's assignment procedure, and the judge must promptly examine it. If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."

*Blackledge v. Allison*, 431 U.S. 63, 52 L. Ed. 2d 136, 97 S. Ct. 1621 (1977), employed the term "frivolous" in describing the standard which must be met for summary dismissal under Habeas Rule 4. According to the Court, the "critical question" is whether the petition's allegations, when viewed against the record, are "so 'palpably incredible,' [citation] so 'patently frivolous or false,' [citation] as to warrant summary dismissal." *Blackledge*, 431 U.S. at 76, 52 L. Ed. 2d at 148, 97 S. Ct. at 1630.

The Second Circuit Court of Appeals further explained the standard for summary dismissal under Habeas Rule 4. *Cuadra v. Sullivan*, 837 F.2d 56 (2d Cir. 1988). In that case, the defendant's *pro se* petition, which was summarily dismissed by the district court, alleged, among other things, ineffective assistance of counsel. The court of appeals noted that under Rule 4, summary dismissal is appropriate only when the petition is frivolous. *Cuadra*, 837 F.2d at 58. The court held: "A legal point that is arguable on its merits is by definition not frivolous." *Cuadra*, 837 F.2d at 58, citing *Anders*, 386 U.S. at 744, 18 L. Ed. 2d at 498, 87 S. Ct. at 1400. The court of appeals noted that Rule 4 "does not contemplate that the court will, without requiring a response from the custodian or otherwise ordering some supplementation of the record, decide a petition on its merits when there is any constitutional claim that, given the facts summarized in the petition, is arguable on its merits." *Cuadra*, 837 F.2d at 58. Thus, "summary dismissal of a habeas petition prior to requiring a response is appropriate only where the petition indicates 'that petitioner can prove no set of facts to support a claim entitling him to relief.' " *Cuadra*, 837 F.2d at 58, quoting *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983). Accord *O'Blasney v. Solem*, 774 F.2d 925, 926 (8th Cir. 1985) ("If the petition is not frivolous and alleges facts which, even though unlikely, would justify granting the writ, then the

petitioner is entitled to have his allegations fairly tested").[7]

In keeping with these federal decisions interpreting "frivolous" in the *habeas corpus* context, we conclude, as noted, that a *pro se* petition seeking postconviction relief under the Act may be summarily dismissed as "frivolous or *** patently without merit" pursuant to section 122—2.1(a)(2) only if the petition has no arguable basis either in law or in fact. A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation. An example of an indisputably meritless legal theory is one which is completely contradicted by the record. See, *e.g.*, *People v. Robinson*, 217 Ill. 2d 43 (2005) (rejecting claim that appellate counsel was ineffective for

---

[7]With regard to *pro se* defendants, federal decisions in the area of *habeas corpus* have mirrored our concern (*e.g.*, *Edwards*, 197 Ill. 2d at 244) that petitions filed *pro se* should be given a liberal construction. *Cuadra v. Sullivan*, 837 F.2d 56, 58-59 (2d Cir. 1988) (where petitioners are *pro se*, "the district court 'should review habeas petitions with a lenient eye, allowing borderline cases to proceed,' " quoting *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983)); *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) ("It is *** well settled that 'however inartfully pleaded,' allegations in a pro se complaint are held to 'less stringent standards than formal pleadings drafted by lawyers,' " quoting *Haines v. Kerner*, 404 U.S. 519, 520, 30 L. Ed. 2d 552, 654, 92 S. Ct. 594, 596 (1972)); *Franklin*, 765 F.2d at 85 ("The allegations of a pro se habeas petition, 'though vague and conclusory, are entitled to a liberal construction,' " quoting *Burris v. United States*, 430 F.2d 399, 402 (7th Cir. 1970)); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Brown v. Roe*, 279 F.3d 742, 745 (9th Cir. 2002) ("*Pro se* habeas petitioners occupy a unique position in the law") (collecting cases); *Williams*, 722 F.2d at 1050 (articulating rationale for liberal construction of *pro se* petitions: "If the writ of habeas corpus is to continue to have meaningful purpose, it must be accessible not only to those with a strong legal background or the financial means to retain counsel, but also to the mass of uneducated, unrepresented prisoners").

failing to argue on direct appeal that out-of-court identification of defendant was inadmissible hearsay, where record showed that the statement at issue fell within the hearsay exception for spontaneous declarations). Fanciful factual allegations include those which are fantastic or delusional.

We turn our attention to defendant's petition in the case at bar, to determine if the circuit court correctly dismissed it as frivolous and patently without merit. The question before us is whether defendant's petition had no arguable basis either in law or in fact, *i.e.*, whether it was based on an indisputably meritless legal theory or a fanciful factual allegation.

In answering this question, we are guided by the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), for determining whether counsel's assistance was ineffective. To prevail on a claim of ineffective assistance under *Strickland*, a defendant must show both that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. At the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced.

## A. Factual Basis

In the case at bar, we cannot say that defendant's petition failed to set forth sufficient facts to establish a constitutional violation for purposes of invoking the Act. With regard to the requirement that the petition "clearly set forth the respects in which petitioner's constitutional rights were violated," defendant alleged that he was denied his sixth amendment right to effective assistance

of counsel when counsel failed, *inter alia*, to investigate and present testimony from three witnesses who would have supported defendant's theory of defense. The petition identified each of the three witnesses and summarized the testimony they would give. Defendant alleged, for example, that one of the witnesses, Michael Glasper, told defendant in 2002 that he was at the gas station the night of the shooting and "actually saw the decease[d] with a weapon." Defendant further alleged that he told his counsel of this conversation, and that Glasper was willing to testify on defendant's behalf, but counsel "didn't even pursue petitioner[']s assertions prior to trial." Defendant provided similar summaries of Scales' and Sanders' potential testimony. According to defendant's allegations, Scales and Sanders would have testified that they arrived at the gas station in the same van as Pitts and knew Pitts was armed with a gun. Sanders allegedly would have testified, in addition, that Pitts had his gun with him when he got out of the van. Defendant stated: "Petitioner's jury did not get a chance to hear any of this evidence, due to trial counsel[']s incompetence, and this can not be held as trial strategy when trial counsel stated a self-defense case."

Defendant's petition also satisfied the corroboration requirements of section 122—2. Attached to the petition were the signed affidavits of the three potential witnesses. The affidavits recounted, in some detail, the testimony each witness would have offered, thus providing independent corroboration of the relevant allegations in defendant's petition. *Cf. Delton*, 227 Ill. 2d at 252-53, 258 (affirming summary dismissal where petition alleged counsel was ineffective for failure to investigate all possible witnesses, but failed to identify any witnesses and failed to submit any affidavits indicating what potential witnesses' testimony would be).

While defendant's allegations regarding Glasper

might appear somewhat unlikely, none of the allegations regarding any of the three witnesses could be described as fantastic or delusional. Indeed, the allegation that Scales was in the van with Pitts the night of the shooting is supported by the testimony of the State's occurrence witness, James Wilson, who also was in the van with Pitts. Moreover, a belief that allegations are unlikely, without more, is insufficient to justify dismissing a petition. See *Denton*, 504 U.S. at 33, 118 L. Ed. 2d at 350, 112 S. Ct. at 1733-34. In this instance, we cannot conclude that, with regard to the allegations concerning the three witnesses, defendant's petition lacked an arguable basis in fact.

## B. Legal Basis

The next question is whether defendant's legal theory that counsel was ineffective for failing to interview and present testimony from these witnesses was itself indisputably meritless. This question focuses on defendant's theory of defense at trial and whether the three witnesses' alleged testimony arguably would have supported this theory.

Defendant's theory of defense at trial was twofold. Counsel argued that defendant fired toward Pitts in self-defense, reasonably believing that his life was in danger, and defendant therefore should be acquitted of first degree murder. In the alternative, counsel argued that, if defendant's belief that his life was in danger was found to be unreasonable, the verdict should be second degree murder. Over the State's objection, the trial court determined there was sufficient evidence to warrant instructing the jury on self-defense and on second degree murder based on an actual but unreasonable belief the use of force was justified. The jury was instructed as to each of these defenses.

On appeal from the summary dismissal of defendant's postconviction petition, the appellate court held, *inter*

*alia,* that even if Glasper, Scales and Sanders had testified, their testimony would not have supported the theory that defendant acted in self-defense. The appellate court did not address whether this testimony would have supported a theory of "unreasonable belief" second degree murder.

With regard to defendant's theory of self-defense, the appellate court explained that, in order to prove that he was acting in self-defense, defendant was required to establish evidence of several factors, including that he was not the aggressor. See *People v. Morgan,* 187 Ill. 2d 500, 533 (1999). The appellate court noted, *inter alia,* that "all six of the gunshot entry wounds were to the back of Pitts' body." No. 1—06—0902 (unpublished order under Supreme Court Rule 23). According to the appellate court, even if the jury had heard the testimony of the three witnesses, the evidence nevertheless would have demonstrated that defendant was the aggressor against Pitts and did not act in self-defense.

We agree with the appellate court that the testimony of the three witnesses would not have supported defendant's theory of self-defense. This is an instance where, with regard to the theory of self-defense, the legal theory that counsel was ineffective for failing to investigate the three witnesses was completely contradicted by the record.

However, we do not reach the same conclusion regarding "unreasonable belief" second degree murder. As part of the jury instruction on second degree murder, the jury was instructed not to convict defendant of first degree murder if it found, by a preponderance of the evidence, that defendant, at the time of the killing, believed circumstances existed which would justify the deadly force he used, but this belief was unreasonable. In our view, it is at least arguable that testimony from three witnesses indicating Pitts was armed the night of the

shooting would have supported a theory that defendant believed, albeit unreasonably, that his actions were justifiable.

As noted, the appellate court did not address whether the three witnesses' testimony would have supported a theory of second degree murder. According to the State, the reason the appellate court addressed only self-defense and not second degree murder is that, in his petition, defendant focused only on the impact the witnesses' testimony would have had on self-defense. Defendant did not expressly allege that this same testimony would have supported "unreasonable belief" second degree murder, which, we note, has been referred to as "imperfect self-defense" (*People v. Jeffries*, 164 Ill. 2d 104, 113-14 (1995)). In the State's view, defendant, who was acting *pro se*, "chose" to focus only on self-defense and not on second degree murder as well, and he should be held to that choice. We reject this argument. The State's strict construction of defendant's petition is inconsistent with the requirement that a *pro se* petition be given a liberal construction. Where defendants are acting *pro se*, courts should review their petitions "with a lenient eye, allowing borderline cases to proceed." *Williams*, 722 F.2d at 1050. In the case at bar, the issue of whether defendant's *pro se* petition, which focused on self-defense, could be said to have included allegations regarding "unreasonable belief" second degree murder—*i.e.*, imperfect self-defense—is at minimum the type of "borderline" question which, under a liberal construction, should be answered in defendant's favor.

Having concluded that the three witnesses' testimony arguably would have supported defendant's theory of "unreasonable belief" second degree murder, we turn to whether defendant's legal theory that counsel was ineffective for failing to interview and present testimony from these witnesses was nevertheless meritless. We answer this question in the negative.

In our view, it must be regarded as at least arguable that counsel's failure in this respect "fell below an objective standard of reasonableness" and prejudiced the defense. See *Strickland*, 466 U.S. at 687-88, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Accordingly, with regard to counsel's failure to investigate and interview the three witnesses, defendant's legal theory of ineffective assistance was not indisputably meritless.

Defendant's petition did not lack an arguable basis either in law or in fact and it should not have been dismissed as frivolous and patently without merit.[8]

The partial dissent argues that defendant cannot establish either of the statutory exceptions under which an aggressor may claim "unreasonable belief" second degree murder as a defense. On this basis, the dissent contends that defendant's petition was properly dismissed as frivolous. The dissent's argument, which deals in some detail with the specific statutory provisions involved, is more appropriate to the second stage of postconviction proceedings, where the State would have the opportunity to advance it. See 725 ILCS 5/122—5 (West 2006). Whatever else the "arguable basis" standard might require of a *pro se* petition at the first stage, it does not require the degree of specificity in allegations regarding legal arguments and authority which the dissent apparently contemplates.

We express no opinion at this stage as to whether defendant will ultimately be able to prevail on his ineffective-assistance claim. Such a decision on the merits, prior to allowing the State to file responsive pleadings, would be inappropriate where, as here,

---

[8]We need not address defendant's allegation that counsel was ineffective for failing to present evidence of additional cartridge cases allegedly found at the scene. Under the Act, summary partial dismissals are not permitted at the first stage of a postconviction proceeding. *Rivera*, 198 Ill. 2d at 374.

defendant's claim of a constitutional violation is arguable on its merits. See *Cuadra*, 837 F.2d at 58; see also *Edwards*, 197 Ill. 2d at 246-47 (decision as to whether defendant has made a "substantial showing of a constitutional violation" is inappropriate at first stage of postconviction proceeding).

## III. CONCLUSION

We reverse the appellate court's judgment affirming the circuit court's summary dismissal of defendant's petition for postconviction relief as frivolous and patently without merit. The cause is remanded to the circuit court with directions that defendant's request for appointment of counsel be granted and the matter be advanced to the second stage of postconviction proceedings.

*Reversed and remanded with directions.*

JUSTICE GARMAN, concurring in part and dissenting in part:

The central question in this case is the standard a court should employ in determining whether a petition for postconviction relief is frivolous or patently without merit. I agree with the majority in its analysis of this standard and in its application as to defendant's self-defense claim. I write separately to express my disagreement with the majority's analysis of defendant's second degree murder claim. Simply stated, I do not believe, under the facts of this case, that defendant is entitled to any relief and the trial court's dismissal of his postconviction petition should be affirmed.

The majority properly concludes, as did the appellate court below, that defendant's self-defense claim is completely contradicted by the record because defendant was the aggressor. 234 Ill. 2d at 20-21. However, the majority fails to consider how defendant's aggression likewise affects his attempt to mitigate the offense to second degree murder. I believe this is an error because

even if we take defendant at his word and draw all inferences in his favor, he cannot avail himself of the only section of the statute relevant to his second degree murder defense.

In order to mitigate the offense of first degree murder to second degree murder on the basis of an actual but unreasonable belief that self-defense was required, a defendant must prove the elements of section 9—2(a)(2) of the Criminal Code (720 ILCS 5/9—2(a)(2) (West 2006)).

Section 9—2(a)(2) provides, in relevant part, that

> "(a) A person commits the offense of second degree murder when he commits the offense of first degree murder *** and ***
>
> > (2) [a]t the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable." 720 ILCS 5/9—2(a)(2) (West 2006).

This is often referred to as "imperfect self-defense." See *People v. Davis*, 213 Ill. 2d 459, 492 (2004).

The critical language in this passage is that the defendant must believe circumstances exist that would justify the use of force under article 7. Thus, the question here is not, as the majority states, whether "defendant believed, albeit unreasonably, that his actions were justifiable." 234 Ill. 2d at 21. Instead, the question is whether the facts, as defendant believed them to be at the time, would, under article 7, justify or exonerate the killing if they were true. The record contains no facts that would "justify or exonerate the killing under the principles stated in Article 7." 720 ILCS 5/9—2(a)(2) (West 2006).

Article 7 identifies a number of limited circumstances under which a person is entitled to use force, even deadly force. 720 ILCS 5/7—1 *et seq.* (West 2006). These include the right to use deadly force where a person "reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another." 720

ILCS 5/7—1(a) (West 2006). This section is, apparently, the section of code that the majority relies on in finding that defendant's petition presents an arguable basis for his imperfect self-defense claim.

However, section 7—1 is not applicable to defendant because defendant was the aggressor. Instead, defendant may rely only on section 7—4, "Use of Force by Aggressor," to attempt to exonerate his actions. 720 ILCS 5/7—4 (West 2006).

Section 7—4 provides in relevant part that the justification for using force

"described in the preceding Sections of this Article is not available to a person who:

\* \* \*

(c) Otherwise initially provokes the use of force against himself, unless:

(1) Such force is so great that he reasonably believes that he is in imminent danger of death or great bodily harm, and that he has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or great bodily harm to the assailant; or

(2) In good faith, he withdraws from physical contact with the assailant and indicates clearly to the assailant that he desires to withdraw and terminate the use of force, but the assailant continues or resumes the use of force." 720 ILCS 5/7—4 (West 2006).

In the present case, it is undeniable that defendant provoked whatever force he believes was used against him. Therefore, the only relevant question is whether one of the two statutory exceptions applies, such that defendant is entitled to claim this defense.

Under section 7—4, defendant, as the aggressor, must prove that he believed either that (1) the force he was threatened with was "so great" that he was in imminent danger of death or great bodily harm, *and* that he "exhausted every reasonable means to escape \*\*\* other than the use of force"; or (2) he withdrew "from physical

contact with [Pitts]" and clearly indicated to Pitts that he desired to withdraw and terminate "the use of force," but Pitts "continue[d] or resume[d] the use of force." (Emphasis added.) 720 ILCS 5/7—4 (West 2006). Defendant cannot establish either of these two exceptions. Defendant's own testimony and statements completely contradict his second degree murder claim.[9]

Defendant testified that the dispute began when his nephew, Durrell Jackson (Toniac), got into an argument with the deceased, Christopher Pitts, and threw a beer bottle at Pitts.[10] Defendant further testified that after Toniac threw the bottle, two of Pitts's friends exited the van they and Pitts had arrived in and began approaching Toniac.

Defendant then pulled his nine-millimeter semiautomatic handgun from the pocket of his coat and fired two rounds over the heads of Toniac, Pitts, and Pitts's two friends. Defendant explained that he fired the two shots as a warning to insure that there was a fair fight between Toniac and Pitts. At the time defendant discharged his weapon, no other guns had been drawn, no other rounds had been fired, no weapons of any kind had been displayed, and no verbal threats had been made. The only act of violence prior to defendant discharging his weapon was Toniac throwing his beer bottle at Pitts.

Defendant testified that after he fired the rounds, everyone ran, as "the shot must have kind of scared everybody." Defendant then left the area next to the

---

[9]Because the relevant inquiry is whether defendant believed, albeit unreasonably, that circumstances existed that would have exonerated or justified the use of force under statute, I have focused exclusively on defendant's own statements of what he believed the facts to be.

[10]At trial, defendant recanted his videotaped statement that Toniac "tried to hit [Pitts]" with the bottle and instead testified that Toniac merely "threw it at the direction of the victim" not "at him." This is a distinction without a difference.

vehicle, where he had been standing when he fired the shots, and went to "check up on Toniac." Toniac had likewise left the area in front of the cashier's window on the west side of the station and had pursued Pitts east along the north side of the gas station.

Defendant stated that when he and Toniac reached the northeast corner of the gas station, they stopped. It was at this point that, defendant claims, he heard someone else shooting and heard a bullet come past him. However, instead of ducking down, finding shelter, or running for cover, defendant turned the northeast corner of the building and began chasing Pitts south along the back (east side) of the gas station.

At trial, defendant testified that he and Toniac were standing together on the northeast corner of the gas station when the other shots were fired.[11] Defendant further testified that only after these other shots were fired did Toniac pull his gun out, and that the two of them turned the corner together. Defendant stated that Toniac fired only one round toward Pitts and that this round was fired at the northeast corner of the building. Defendant stated that Toniac did not fire any other rounds and that Toniac broke off his pursuit in the middle of the east side of the building. Defendant, however, admits that he continued to pursue Pitts. In defendant's videotaped statement, he told police that he "fired four or five rounds" at Pitts while chasing him. At trial, defendant initially testified that he fired only two rounds and that these rounds were not fired at Pitts but merely "in his direction." However, during cross-examination defendant admitted to having fired four or five rounds at Pitts while chasing him.

---

[11]This statement contradicts defendant's videotaped statement where he stated that as he turned the northeast corner he saw Toniac chasing Pitts with his gun drawn and saw him fire two rounds over Pitts's head.

Defendant testified that he fired on Pitts because: "I thought he was shooting at me. He was the only one in front of me." Defendant did, however, admit that he never saw Pitts with a weapon, let alone see Pitts fire a weapon at him or Toniac.

Defendant testified that he continued to chase Pitts southwest from the rear of the building toward the intersection of Cicero and Augusta. He stopped his chase when he was standing in the intersection of Cicero and Augusta and realized he was out of ammunition.[12] Defendant admitted to seeing Pitts fall on Cicero. Defendant further testified that he assumed Pitts fell because he had been shot, but denied seeing Pitts fall as a result of a shot he fired.

Defendant stated that after he saw Pitts fall, he turned back toward the gas station and tried to go back to his car, but by that time, Toniac had already left the gas station and was being pursued by a squad car. Defendant said that he then made his way back home, disposing of pieces of his gun at various points along his path.

In his postconviction petition, defendant alleges that his attorney was ineffective for failing to investigate and present the testimony of three witnesses who would have testified that Pitts had a gun the night he was killed.

---

[12]Defendant denies pursuing Pitts to the point Pitts was killed, one-quarter block south of Augusta on Cicero. However, evidence produced at trial showed that defendant was the only person firing nine-millimeter rounds on the night in question. Moreover, there were seven nine-millimeter casings found in the immediate proximity of Pitts's body. Expert testimony for the State established that all the nine-millimeter casings recovered, both at the gas station, where defendant admits he was firing rounds, and those found next to the body, were fired from the same gun. Forensics was unable to link the casings to defendant's actual weapon, however, as defendant dismantled the weapon and threw pieces in various locations during the course of his flight from the scene.

None of these witnesses would testify to seeing Pitts brandish the weapon or otherwise use the gun he supposedly had. However, even assuming, *arguendo*, that these witnesses could establish not only that Pitts had a gun, but that Pitts actually fired at defendant during the course of his flight, this would be insufficient to entitle defendant to further proceedings because the legal theory of second degree murder is completely contradicted by the record. Therefore, where defendant's own statements preclude the very defense he claims counsel was ineffective for not pursuing, there is no prejudice.

In this case, defendant cannot establish the first exception to section 7—4, because even if the facts were as he believed them to be, he took no measures to escape. In fact, defendant pressed the engagement at every opportunity. Once he dispersed the crowd, by firing his weapon, he joined Toniac and chased after Pitts. When he and Toniac stopped at the northeast corner of the gas station, he did not stop or withdraw, but turned the corner and continued the engagement. When Toniac ceased his pursuit of Pitts, defendant continued the chase. Though Pitts was in open flight, defendant continued to fire at the fleeing man's back until he was out of ammunition.

Likewise, defendant cannot establish the second exception in section 7—4, because even if the facts were as he believed them to be, he never gave any indication that he desired to terminate the use of force. As noted above, defendant pressed the use of force at every opportunity.

In sum, even if the facts were as defendant believed them to be, his use of force would not be exonerated or justifiable under the conditions provided in article 7. Therefore, defendant's second degree murder theory is completely contradicted by the record, and even if counsel's performance was deficient, defendant could not have been prejudiced by this deficiency.

In reaching this conclusion, I recognize that the trial court allowed defendant to present the imperfect self-defense instruction to the jury, over the State's objection. However, the trial court's decision to err on the side of caution does not mean that a reviewing court is required to entertain a frivolous postconviction claim simply because the defendant received a jury instruction on that basis.

I also note that because the majority held that the preceding issue was sufficient to warrant reversal of the trial court's dismissal, it did not reach defendant's argument that there were more shell casings recovered from the scene than were presented at trial. For the reasons stated above, I also find this argument frivolous. As noted, even if other people were shooting, that does not change the fact that defendant instigated this violence and chased and shot at a man as he ran away, killing him.

The majority takes issue with this partial dissent on the basis that it goes beyond the level of detail that a *pro se* defendant would be required to assert in a first stage petition, and is more appropriately addressed at the second stage of postconviction review. 234 Ill. 2d at 22. I dissent, not because of the sufficiency of defendant's petition, but because when defendant's claims are compared to the factual record, it is clear that his allegations are indisputably meritless.

At the first stage of a postconviction petition, a court must, within 90 days of petition's filing, examine the petition and determine whether the claim is frivolous. 234 Ill. 2d at 10 (citing *People v. Edwards*, 197 Ill. 2d 239, 244 (2001), and 725 ILCS 5/122—2.1(a)(2) (West 2006)). This review necessarily requires the court to examine the petition in conjunction with the record. This is particularly true where the court finds that the factual allegations are not fanciful and therefore must consider

whether the legal claim is "completely contradicted *by the record.*" (Emphasis added.) 234 Ill. 2d at 16. To properly perform this analysis, the court should first examine the law which governs the defendant's claimed error and then compare the applicable law regarding that claim to the factual record of the case. See, *e.g., People v. Robinson*, 217 Ill. 2d 43 (2005) (finding that the record was adequate to affirm the summary dismissal of the defendant's postconviction petition at the first stage); *People v. Edwards*, 197 Ill. 2d 239 (2001) (finding that the record was insufficient to allow dismissal at the first stage). The majority structures its analysis of defendant's self-defense claim on this model and it is the same structure I employ in this dissent.

Second stage review should be reserved for those cases that have arguable merit. Where, as here, the record allows a court to dispose of a frivolous motion without further involvement of the court or the allocation of additional state resources, the court should do so. In this case, defendant's entire argument, both with regard to self-defense and with regard to second degree murder, is refuted by the record.

Therefore, I respectfully dissent in part and concur in part from the majority opinion and would hold that the trial court properly dismissed defendant's petition as frivolous.

JUSTICES THOMAS and KARMEIER join in this partial concurrence and partial dissent.