2020 IL App (1st) 171809-U

No. 1-17-1809

SIXTH DIVISION
MAY 29, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 14340 |
| | ) | |
| TERRANCE OLDEN, | ) | Honorable |
| | ) | Thomas V. Gainer Jr., |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Mikva and Justice Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*: Summary dismissal of the defendant's *pro se* postconviction petition was proper where the defendant failed to make an arguable claim that he received ineffective assistance of plea counsel.

¶ 2     The defendant-appellant, Terrance Olden, who pled guilty to first degree murder and was sentenced to 25 years' imprisonment, appeals from the summary dismissal of his *pro se* petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). On appeal, the defendant contends that his petition presented an arguably meritorious claim

that his trial counsel provided ineffective assistance by misadvising him that he did not have any defense to the charge of first degree murder, and that absent counsel's ineffectiveness, he would not have pled guilty. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 3                                    BACKGROUND

¶ 4      The defendant's conviction arose from the stabbing death of Donald Ellens on June 24, 2012. Following his arrest, the defendant was charged by indictment with four counts of first degree murder and one count of armed robbery. Counts I and II charged intentional or knowing murder, while counts III and IV charged strong probability murder. Counts II and IV indicated that the State would seek an extended-term sentence because Ellens was killed during an armed robbery. Count V alleged that the defendant took a cell phone, jewelry, and currency from Ellens by using or threatening force while armed with a knife.

¶ 5      On September 25, 2014, the defendant agreed to plead guilty to count I in exchange for a sentence of 25 years in prison. The State *nol-prossed* counts II through V. The trial court admonished the defendant that he was charged with first degree murder based on an allegation that he "knowingly and without justification, intentionally or knowingly, stabbed and killed Donald Ellens, *** with a knife." When the trial court asked the defendant if he understood the charge, the defendant answered that he did. The trial court then informed the defendant that the charge carried a "range of penalties from 20 years to 60 years," and the defendant indicated that he understood.

¶ 6      The trial court admonished the defendant that he had the right to a trial by a judge or jury, where he could call and cross-examine witnesses and present evidence, and that the State must

prove him guilty beyond a reasonable doubt for him to be convicted. The defendant acknowledged that he understood these admonishments and that he was waiving his right to a trial by pleading guilty. He signed waivers of a jury trial and of a presentencing investigation. The court ascertained from the defendant that no threats or promises beyond the plea agreement were made to him to obtain his guilty plea.

¶ 7    As a factual basis for the plea, the State proffered that Ellens' daughter would testify that on June 26, 2012, she went to Ellens' residence and found him deceased with "numerous" stab wounds. A Chicago police detective would testify that neighbors identified the defendant "as being in and around" Ellens' house on June 24, 2012. Following the defendant's arrest, he stated that he argued with Ellens, stabbed him, and took his cell phone, jewelry, and money. Officers searched the defendant's residence and recovered the knife, the jewelry, and the shoes he wore during the incident.

¶ 8    The trial court accepted the defendant's plea, entered a guilty finding on count I, and heard a victim impact statement read by Ellens' daughter. When the court asked the defendant if there was anything he wished to say before sentencing, the defendant responded as follows:

> "Yes. There's no words to explain my actions the night of [Ellens']
> death. I was just out of it. I couldn't control what was going on with
> me at that moment. I am truly sorry for what happened. I hope the
> victim's daughter can forgive me for what I have done. That's all."

Following this statement, the trial court announced the defendant's sentence of 25 years' imprisonment, to be followed by three years of mandatory supervised release. The trial court also admonished the defendant of his appeal rights. The trial court told the defendant that in order to

appeal, he must first, within 30 days, file a written motion "to vacate or set aside" his guilty plea, raising every reason why he believed he was entitled to have the guilty plea set aside. The court advised the defendant that any reason he did not raise in the motion would be forfeited, and he would not be able to assert it "in this court or any other court in the future." The defendant stated that he understood these admonishments and had no questions. He did not file a motion to withdraw his plea.

¶ 9     On February 4, 2015, the defendant filed a *pro se* late notice of appeal alleging ineffective assistance of counsel and insufficiency of the evidence. The defendant asserted that he was unable to file a timely notice of appeal because he had "no access to the law library within 30 days." This court allowed the defendant's late notice of appeal and appointed counsel.

¶ 10     On appeal, the defendant contended that Illinois Supreme Court Rules 604(d) (eff. Mar. 8, 2016) and 606(a) (eff. Dec. 11, 2014) were constitutionally infirm unless construed to require the appointment of counsel for the 30-day period following a guilty plea. This court dismissed the appeal, finding that the defendant failed to file a motion to withdraw his plea, the trial court properly admonished him of the procedure for withdrawing his guilty plea and perfecting an appeal, and there was no merit to the argument that Rules 604(d) and 606(a) should be construed to include a right to counsel. *People v. Olden*, 2016 IL App (1st) 150296-U.

¶ 11     On July 16, 2015, while the above appeal was pending, the defendant filed a *pro se* "Motion to Withdraw Guilty Plea / or Reconsider Sentence Imposed." In the motion, the defendant alleged that his plea was made "under extreme distress, coercion, forceful pressure of manipulation and various other skillful tactics from my [a]ttorney." The defendant stated that he would not have pled guilty with better representation and that he had been fearful to advise the trial court about trial

counsel's representation. He further indicated that he had "just learned that throughout the whole time [trial counsel] was representing [him] there was in fact another potential suspect" whom trial counsel never mentioned. He also averred that he "now possess[es] lab reports" that trial counsel withheld, which would have provided "a better chance of getting a lesser charge or even winning [his] case." The defendant reiterated that he had been scared to speak up and "just went along" with trial counsel because "she gave [him] the impression there was no other way but to take a plea."

¶ 12    The trial court struck the defendant's motion for lack of jurisdiction, as it was filed more than 30 days after the defendant entered his guilty plea.

¶ 13    On March 31, 2017, the defendant mailed the *pro se* postconviction petition at issue in this appeal. Relevant here, the defendant alleged that he received ineffective assistance where trial counsel, after hurried consultations, coerced him to plead guilty to first degree murder while he was in a state of confusion and misapprehension. He asserted that trial counsel convinced him it would be in his best interest to plead guilty "because he did not have a defense to the charge." He argued, however, that he "felt like he could not control himself, in [the] moment" he stabbed Ellens, and contended that this circumstance constituted a defense to first degree murder. The defendant's petition explained:

> "[The defendant] has maintained, from the very beginning, that [Ellens] was killed as a result of a sudden and intense passion provoked by [Ellens], in conjunction with the fact that [the defendant] had been off of his psychiatric medication, under the

influence of drugs, and had blacked-out, in the moment, while experiencing an emotional episode of childhood sexual abuse."

¶ 14    In his petition, the defendant argued that trial counsel's assertion that he had no defense to first degree murder was clearly erroneous and objectively unreasonable where the following legal concepts were available: "guilty but mentally ill"; second degree murder based on sudden and intense passion resulting from serious provocation by the victim; second degree murder based on an unreasonable belief that the circumstances justified killing the victim; and involuntary manslaughter. He further argued that had trial counsel adequately apprised him "that first[]degree murder consisted of more than the fact that a person was killed," he would have insisted on having a trial and "in the least, tried for an adjudication of guilt for second degree murder."

¶ 15    In an attached affidavit, the defendant stated that, in prison, he first learned the differences between first degree murder, voluntary manslaughter, involuntary manslaughter, and second degree murder. He asserted he could have "bargained" for the right charge in his case. The defendant added:

> "As I told police, the judge, and especially my attorney, that I had a
> flash-back from past trauma that caused me to black-out while in the
> physical dispute with the victim. Also stressing to my attorney that
> I couldn't actually even recall stabbing the victim at all. While
> giving the confession I just broke down in tears because I was
> uncertain about the events with me stabbing the victim. Being under
> the influence at the time didn't help either. What I do know is, I did
> not want or intend to kill the victim and his death arose under the

situation and circumstances from provocation. Not first[]degree murder. I realize, now, that I had a right to show the jury that I was under the influence and my actions were provoked, which caused or contributed to my reckless conduct which ended in the death of the victim. My attorney['s] advice deprived me of that right. She just never took any real time attempting to make sure that I understood the elements of the crime of which I was pleading guilty to so that I could knowingly decide and accept a penalty appropriate to the situation and circumstances that resulted in [Ellens'] death."

¶ 16    In a second, separate attached affidavit, the defendant asserted the following:

"I told my court-appointed attorney, *** from the very first time that I met her, up until the time that I entered my plea, that what happened between Donald Ellens and I, was the result of me being overwhelmed with emotion, which had been provoked by [Ellens'] continuously unwanted sexual advances—that they triggered memories of sexual abuse that I had kept suppressed—and that I just felt like I couldn't control what was happening; that I later had trouble even putting together what had happened; that I was under the influence of drugs and alcohol on the night in question; as well as, amongst other things, I had been off of my psychiatric medication, for quite some time, prior to the homicide."

¶ 17    The defendant attached another affidavit executed by his sister, in which she averred that trial counsel told her "there was nothing she could do for [the defendant's] defense." The defendant also attached an Illinois State Police laboratory report stating that no blood was indicated on a pocket knife and no blood-like stains were noted on a pair of shoes that had been submitted for forensic analysis. A detective's report attached to the petition included a notation that the victim "had suffered multiple stab wounds to his back and chest as well as having his throat cut."

¶ 18    On June 8, 2017, the trial court summarily dismissed the petition as frivolous and patently without merit. The defendant then filed this appeal.

¶ 19                                    ANALYSIS

¶ 20    We note that we have jurisdiction to review the trial court's judgment, as the defendant filed a timely notice of appeal. Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); R. 606 (eff. July 1, 2017).

¶ 21    On appeal, the defendant contends that his postconviction petition should not have been dismissed where it raised an arguably meritorious claim that trial counsel provided ineffective assistance by affirmatively misadvising him that he lacked a "defense" to first degree murder. The defendant asserts that, contrary to counsel's representation, he had grounds to argue for second degree murder based on an unreasonable belief in self-defense. He explains that, read leniently, his petition sets forth an arguable claim that he "believed that Ellens was trying to sexually assault him," which "triggered [his] memories of childhood sexual abuse, causing him to act under this torrent of emotion to defend himself against what he believed to be an impending sexual assault." According to the defendant, he would not have pled guilty to first degree murder if counsel had not given him incorrect legal advice.

¶ 22    As an initial matter, we address the State's argument that the claim the defendant argues on appeal was not included in his postconviction petition. As the State sees it, the defendant "never made a claim in his petition that he told his trial counsel that he had an unreasonable belief in self-defense" and, therefore, the claim is forfeited. Our supreme court, however, has explained that *pro se* petitions must be liberally construed (*People v. Edwards*, 197 Ill. 2d 239, 244 (2001)), and viewed with a lenient eye (*People v. Hodges*, 234 Ill. 2d 1, 16 n.7 (2009)). Here, the defendant alleged in his petition and accompanying affidavits that at the time of the stabbing, he was "experiencing an emotional episode of childhood sexual abuse"; that he told his trial counsel he "had a flash-back from past trauma that caused [him] to black-out while in the physical dispute with the victim"; that he repeatedly informed counsel that the stabbing "was the result of [him] being overwhelmed with emotion, which had been provoked by [Ellens'] continuously unwanted sexual advances—that they triggered memories of sexual abuse that [he] had kept suppressed"; and that he believed the "defense" of second degree murder based on an unreasonable belief that the circumstances justified killing the victim was available in his case. In our view, these statements, taken together and viewed liberally and leniently, expressed a claim that the defendant informed trial counsel that he believed Ellens was trying to sexually assault him, which triggered memories of childhood sexual abuse and, in turn, caused him to act in what he believed was self-defense. We accordingly decline to find forfeiture.

¶ 23    The Act provides a three-stage process for adjudicating a defendant's claim that his or her conviction resulted from the substantial denial of a constitutional right. 725 ILCS 5/122-1 (West 2016); *Hodges*, 234 Ill. 2d at 9. This case involves the first stage of the process, during which the trial court independently assesses the petition, taking the allegations as true. *Hodges*, 234 Ill. 2d at

10. Based on this review, the trial court must determine whether the petition "is frivolous or is patently without merit," and, if it so finds, must dismiss the petition. 725 ILCS 5/122-2.1(a)(2) (West 2016). Our review of a first-stage dismissal is *de novo*. *Hodges*, 234 Ill. 2d at 9.

¶ 24    A petition may be dismissed as frivolous or patently without merit "only if the petition has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 16. A petition has no arguable basis in law when it is founded on "an indisputably meritless legal theory," for example, a legal theory that is completely belied by the record. *Id.* A petition has no arguable basis in fact when it is based on a "fanciful factual allegation," which includes allegations that are "fantastic or delusional" or contradicted by the record. *Id.* at 16-17; *People v. Morris*, 236 Ill. 2d 345, 354 (2010).

¶ 25    Traditionally, to establish ineffective assistance of counsel, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) but for counsel's errors, there is a reasonable probability that the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Our supreme court has explained that a postconviction petition "alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17. Where a claim of ineffectiveness may be disposed of on the ground of lack of sufficient prejudice, "that course should be followed." *Strickland*, 466 U.S. at 697.

¶ 26    In order to establish the prejudice prong of a claim of ineffectiveness in connection with the entry of a guilty plea, a defendant must show a reasonable probability that, absent plea counsel's errors, he would have pled not guilty and insisted on going to trial. *People v. Hall*, 217

Ill. 2d 324, 335 (2005); see also *People v. Ramirez*, 402 Ill. App. 3d 638, 640-43 (2010) (applying *Hall* in an appeal from the summary dismissal of a postconviction petition). Such an allegation must be accompanied by either a claim of innocence or the articulation of a plausible defense which could have been raised at trial. *Hall*, 217 Ill. 2d at 335-36. Determining whether "counsel's deficient representation caused the defendant to plead guilty depends in large part on predicting whether the defendant likely would have been successful at trial." *Id.* at 336. To obtain relief, a defendant " 'must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.' " *People v. Hughes*, 2012 IL 112817, ¶ 65 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

¶ 27     In this case, the defendant cannot establish arguable prejudice because he has not alleged a plausible defense that likely would have been successful at trial. The defendant's position is that, had he gone to trial, he would have had an arguable claim of second degree murder based on an unreasonable belief in self-defense. A person commits this form of second degree murder when he commits the offense of first degree murder and, at the time of the killing, he believes the circumstances to be such that, if they exist, would justify the use of deadly force under the principles of self-defense, but his belief is unreasonable. 720 ILCS 5/9-2(a)(2) (West 2012). To establish self-defense, a defendant must show that unlawful force was threatened against him; the danger of harm was imminent; he was not the aggressor; he believed that a danger existed; force was necessary to avert the danger; the type and amount of force was necessary; and his beliefs were reasonable. *People v. Hawkins*, 296 Ill. App. 3d 830, 837 (1998). "The difference between a justified killing under self-defense and one not justified, amounting to [second degree murder], is that in the former instance the belief that the use of force is necessary is reasonable under the

circumstances, and in the latter, the belief is unreasonable." *People v. Ellis*, 107 Ill. App. 3d 603, 611 (1982). Here, the defendant's assertion that the "defense" of second degree murder based on the unreasonable belief in the need to act in self-defense would have been available to him had he gone to trial is completely belied by the record.

¶ 28     At the plea hearing, the State proffered that the medical examiner would have testified that Ellens died as a result of multiple stab wounds. A police report that the defendant attached to his postconviction petition gave more detail regarding the location of these wounds: it stated that Ellens "had suffered multiple stab wounds to his back and chest as well as having his throat cut." The fact that the defendant stabbed Ellens multiple times, including in his back, undercuts any claim that the defendant believed he was acting in self-defense, reasonably or unreasonably, or that the type and amount of force used was necessary. See, *e.g.*, *People v. Lewis*, 2015 IL App (1st) 122411, ¶ 70 (where the defendant shot the victim multiple times, he could not have continued to fear death or great bodily harm after the victim was disabled); *People v. Cook*, 262 Ill. App. 3d 1005, 1016 (1994) (where the victim's injuries were extensive and the defendant was unscathed, the "apparent one-sided nature of the struggle support[ed] the State's theory that the defendant did not act in self-defense"); *People v. Mikell*, 217 Ill. App. 3d 814, 828 (1991) (evidence that the victim was stabbed in the back contradicted the defendant's self-defense argument).

¶ 29     Moreover, according to the factual basis for the defendant's plea, he confessed that, after stabbing Ellens multiple times, he took Ellens' cell phone, jewelry, and money. This evidence further contradicts any claim of self-defense. See, *e.g.*, *People v. Jackson*, 304 Ill. App. 3d 883, 896 (1999) (evidence that the defendant took the victim's property rebutted the defendant's argument that he merely acted in self-defense when he stabbed the victim to death); *People v.*

*Robinson*, 21 Ill. App. 3d 343, 347 (1974) (evidence that the defendant robbed the shooting victim was "directly contradictory to defendant's testimony that he acted in self-defense").

¶ 30     The record in this case, though limited, completely belies the defendant's claim of having acted in self-defense. As such, second degree murder was not available to the defendant and it is not arguable that counsel's performance fell below an objective standard of reasonableness even if she did not inform him of this nonviable option. Consequently, it is not arguable that the defendant was prejudiced by counsel's inaction. See *People v. Miramontes*, 2018 IL App (1st) 160410, ¶ 19 (a defendant is prejudiced only when there is a reasonable probability that there would have been a different outcome in the defendant's case).

¶ 31     Given the evidence in this case, there is no likelihood that the defendant could have succeeded at trial in convincing a trier of fact that he acted in self-defense. The legal theory that trial counsel was ineffective is contradicted by the record and without an arguable basis in law (see *Hodges*, 234 Ill. 2d at 17, 20), and the lack of a plausible defense renders the defendant unable to show that counsel's deficient representation caused him to plead guilty. See *Hall*, 217 Ill. 2d at 335-36). Thus, the trial court's summary dismissal of the defendant's postconviction petition was proper.

¶ 32                                    CONCLUSION

¶ 33     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 34     Affirmed.