2020 IL App (1st) 171925-U
No. 1-17-1925
Order filed August 24, 2020

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 02 CR 3925 |
| | ) | |
| JUAN ACEVES, | ) | Honorable |
| | ) | Michele M. Pitman, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE GRIFFIN delivered the judgment of the court.
Justices Hyman and Pierce concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court's second-stage dismissal of defendant's postconviction petition is affirmed over his contention that his postconviction counsel rendered an unreasonable level of assistance.

¶ 2    Following a 2004 jury trial, defendant Juan Aceves was found guilty of two counts of first degree murder (720 ILCS 5/9-1(a) (West 2000)) for the shooting deaths of Sammy Mendez and Adolfo Espinoza, and sentenced to concurrent terms of natural life imprisonment. On direct appeal, we affirmed defendant's convictions and sentence. *People v. Juan Aceves, Jr.*, 1-05-1728 (2007) (unpublished order under Supreme Court Rule 23).

¶ 3    On November 18, 2012, defendant filed a *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). The circuit court advanced the petition to the second stage of postconviction proceedings and appointed counsel. The State filed a motion to dismiss the petition which the court granted. Defendant appeals, arguing that this court should reverse and remand for further proceedings under the Act because appointed postconviction counsel rendered an unreasonable level of assistance. We affirm.

¶ 4    Because we recounted the evidence presented at defendant's jury trial at length in our order disposing of defendant's direct appeal and because that evidence is not relevant to his sole contention on appeal, we set forth only those facts necessary to place defendant's contention into context.

¶ 5    Defendant was arrested in Austin, Texas in connection with an April 30, 2000 shooting that occurred near the intersection of North Vincennes Avenue and 13th Street in Chicago Heights. Assistant State's Attorney (ASA) Nick D'Angelo traveled to Texas and questioned defendant, who, after being advised of his *Miranda* rights, gave a videotaped confession.

¶ 6    In the confession, defendant explained that, because several members of the Latin Kings street gang had been flashing gang signs on the day of the shooting, he was posted as security at Jaime Balderas' house while Chris Diaz rode his bicycle as a lookout. Defendant stated that he was given a black handgun for his duty. While defendant stood in front of the house, he heard Diaz yell for help and ran to assist him. When defendant arrived on the corner, he saw a man in a yellow shirt confronting Diaz. Defendant told the man to get on the ground, but shot the man when a car pulled up to the scene. Although defendant was aware that another person was shot, he stated that he "blanked out" and could not remember firing another shot. In his confession,

defendant admitted that he did not remember seeing anyone at the corner with a weapon and that he shot at the dark blue car that pulled up to the scene. After the shooting, defendant returned to Balderas' house and threw the black gun into the garage. Two days later, defendant fled Illinois, and eventually ended up in Texas where he was apprehended.

¶ 7    Gabriela Gomez, defendant's girlfriend at the time of the shooting, testified that defendant is the father of her first child. On the date of the shooting, Gomez was with defendant at a party at Balderas' house located on North Vincennes. Balderas, defendant and the other partygoers, including Diaz, were members of the Spanish Gangster Disciples street gang. About 6:30 p.m., defendant was told to stand in front of the house to act as security against the rival Latin Kings street gang that had been driving around the neighborhood. After defendant received a gun with a brown wooden handle, Gomez accompanied him to the front of the house. When Gomez stated that she could not recall whether defendant was handed another gun, the State confronted her with her grand jury testimony. Gomez read the testimony and reviewed pictures that she had initialed, but, when the State read the testimony aloud, she claimed that she did not remember the questions she was asked or her answers. Gomez testified before the grand jury that defendant was handed two guns and chose a black handled gun because it held more bullets. Soon after they went to the front of the house, defendant ran through a vacant lot to assist Diaz, who had whistled and yelled from the corner. Gomez testified before the grand jury that she heard five or six gunshots and she went back to Balderas' house. Defendant returned to the house with a black gun, which he gave to Balderas. Gomez further testified before the grand jury that defendant said that he thought he had shot someone. At trial, Gomez testified that she did not recall defendant returning to the house with a gun or saying that he had shot someone.

¶ 8    Gomez was confronted by the State about her interview with an Assistant State's Attorney Nick D'Angelo (ASA) and a detective. Gomez again testified that she did not recall making these statements and denied telling the detective that defendant shot the victims because they were members of the Latin Kings street gang.

¶ 9    The State presented the testimony of ASA D'Angelo and the detective, who both testified to their respective interviews with Gomez and authenticated the State's presentation of the questions and responses from the interviews. D'Angelo also identified exhibits, including a certified grand jury transcript and photos of three guns that Gomez had used to identify the black handgun used by defendant.

¶ 10    Gerardo Urquizo, a member of the Spanish Gangster Disciples street gang, testified that he was present at the party at Balderas' house. Urquizo corroborated Gomez's grand jury testimony that defendant was armed with a black handgun and that about five or six shots were fired shortly after a whistle came from the intersection of 13th Street and North Vincennes. After the shooting, Urquizo disposed of a gym bag, containing three guns, in the woods north of Balderas' house.

¶ 11    Nick Rodriguez testified that at approximately 6:30 p.m. on April 30, 2000, he was in the driveway of his home at the corner of North Vincennes and 13th Street, and saw Chris Diaz riding a bicycle up and down 13th Street. Rodriguez testified that Diaz was continuously looking around the neighborhood as he rode. Rodriguez saw a blue car slowly approach east on 13th Street and stop about 20 feet from Diaz, who yelled at the occupants of the car and also shouted in the opposite direction of the car. The car parked and two men exited the car and exchanged words with Diaz. Rodriguez testified that one of the men was wearing a yellow shirt. Rodriguez

looked away and heard gunshots. When he looked back, he saw a different person in a blue shirt holding a gun and shooting the man in the yellow shirt. Rodriguez heard three or four shots fired as he and his wife retreated into their house to call the police. Rodriguez looked out and saw the blue car driving away on North Vincennes.

¶ 12    Officer Christina Benton responded to the scene and found Espinoza in the alley of 1315 North Vincennes. Espinoza was lying on his back with a wound to his neck. Benton found Mendez at 14th Street and North Vincennes with paramedics on the scene. While at the second scene, Benton monitored a radio call of a reckless driver in a dark blue car about five blocks from the crime scene. The car was later recovered, but the driver was never found. No weapons were recovered from the victims, the dark blue car, or either crime scene. After canvassing the area, Benton found two shell casings at the northeast corner of 13th Street and North Vincennes.

¶ 13    A detective recovered the gym bag from the woods that Urquizo had discarded. The bag contained, in part, a Walther PPK semiautomatic pistol, a Lorcin .380 caliber pistol, and a shotgun. The bag and its entire contents were entered into evidence without objection. The State presented evidence that the fired shell casings matched the Lorcin handgun found in the gym bag.

¶ 14    Medical examiners testified that both victims died of the gunshot wounds they suffered. The medical examiners opined that Mendez was shot in the chest and Espinoza had been shot in his left arm with the bullet exiting through his chest, consistent with being shot from behind while fleeing.

¶ 15    Defendant testified that, when he ran to assist Diaz, he saw Diaz on the ground and being beaten by two men. Defendant fired a warning shot and the man in the yellow shirt began

walking towards him. Defendant shot the man because he believed the man was reaching for a gun. The dark blue car then approached defendant, who shot at the car.

¶ 16     The jury found defendant guilty of two counts of first degree murder. The trial court sentenced him to concurrent terms of natural life imprisonment.

¶ 17     On direct appeal, defendant contended that (1) the trial court denied him a fair trial by allowing evidence of other weapons that were not used in the commission of the crime; and (2) the trial court erred in allowing the substantive admission of additional prior inconsistent statements of Gomez. We affirmed defendant's convictions. *Juan Aceves, Jr.*, 1-05-1728 (2007) (unpublished order under Supreme Court Rule 23).

¶ 18     On December 3, 2012, defendant filed a *pro se* petition under the Act. In the petition, defendant alleged numerous claims of ineffective assistance of trial counsel. He also alleged that the State engaged in prosecutorial misconduct during closing arguments, elicited perjured testimony, and withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). He further alleged that the trial court failed to properly admonish the jury as required by Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), that the jury was biased against him and that appellate counsel was ineffective for failing to raise these claims on direct appeal. Defendant attached his own affidavit to the petition, a letter from "The Review Case Research Group," two letters from the "National Inmate Advocacy Program," and a disciplinary decision entered against his retained trial counsel Raymond L. Prusak, whom defendant retained in February 2004 (after he was found guilty and sentenced) and discharged on April 19, 2006. Prusak's misconduct in handling defendant's case caused defendant's direct appeal to be delayed by over a year. On

February 8, 2013, the circuit court docketed the petition and appointed counsel to represent defendant.

¶ 19    On April 5, 2013, Assistant Public Defender Lynn Wilson filed her appearance, confirmed that she was in receipt of defendant's *pro se* petition and obtained a court order for the release of transcripts.

¶ 20    During the next several court dates, counsel related to the court that, despite having ordered the transcripts, she did not receive the records. On August 1, 2014, counsel informed the court that she had reviewed defendant's petition. Counsel related that defendant raised several allegations of ineffective assistance of trial counsel in his petition and that she had sent a letter to defendant's trial counsel (Prusak) requesting a copy of his trial file.

¶ 21    On October 17, 2014, counsel informed the court that Prusak had been disbarred, but that she had spoken to his wife, who told her that they no longer had the record for defendant's case due to the age of the case. Counsel asked for a continuance so she could "review the issues." She informed the court that defendant alleged his trial counsel was ineffective for failing to investigate and "several other issues of ineffective assistance" that she needed to "look into." The State informed counsel that if she needed police reports or other records it would order the trial file and tender it to her.

¶ 22    On the next court date, January 16, 2015, the State informed the court that it had spoken with defendant's postconviction counsel and that counsel is "working on the case. She has read the record. She has briefed the issues. Her client has three or four witnesses that he would like her to investigate. Her investigator is out there looking for those witnesses." The State informed the court that the parties had agreed to continue the case to March 20, 2015.

¶ 23 On that date, counsel informed the court that she had reviewed the transcripts and all the issues in the petition and that she was "trying to locate some witnesses." She explained that her investigator was looking for the witnesses and the matter was continued.

¶ 24 On June 12, 2015, counsel informed the court that she was still waiting on the trial file. She also explained that defendant had alleged trial counsel failed to investigate and missed possible witnesses. She relayed to the court that there were two witnesses left that she needed to interview and that her investigator was interviewing one of these witnesses that week. Counsel further explained that the last witness is in Texas and that her investigator has not had a chance to go to Texas. The State also informed the court that there was a "significant time period" where the clerk's office could not locate the record and that the "trial file" was destroyed.

¶ 25 On August 28, 2015, counsel informed the court that she had completed her investigation, but that she did not have a chance to speak with defendant nor to comply with Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). Counsel told the court that she had arranged a phone call with defendant on September 9 and the matter was continued to September 18.

¶ 26 On the next court date, counsel relayed that she had reviewed the petition, consulted with defendant, and that she would not be preparing an amended or supplemental petition. Counsel then filed her certificate under Rule 651(c), which stated as follows:

> "1. I have consulted with the petitioner, Juan Aceves, by phone, mail, electronics means or in person to ascertain his contentions of deprivations of constitutional rights; 2. I have obtained and examined the record of proceedings at the trial and sentencing in this case; 3. I have not prepared a Supplemental Petition for Post-Conviction Relief as the

petitioner's previously-filed *pro se* petition for post-conviction relief adequately sets forth the petitioner's claims of deprivation of his constitutional rights."

The matter was continued to January 8, 2016, for the State to file a motion to dismiss the petition.

¶ 27    On December 30, 2015, defendant filed a "Pro Se Amended Petition for Post-Conviction Relief," adding several claims to his initial petition. On January 8, 2016, the State filed a motion to dismiss defendant's initial petition. Assistant Public Defender Lynn Roseland, appearing on behalf of defendant, requested a date of March 18, 2016, to file a response to the State's motion.

¶ 28    On March 14, 2016, defendant filed a *pro se* motion to "Discharge Appointed Counsel and Reappointment of Different Counsel on Post-Conviction Petition." In the motion, defendant alleged that his postconviction counsel (Lynn Wilson) did not respond to his letters or requests, refused to amend his petition in accordance with his requests, refused to incorporate his amended petition into the initial petition, attempted to discourage defendant from filing an amended petition, and refused to investigate certain witnesses as requested by defendant.

¶ 29    On March 28, 2016, postconviction counsel informed the court that defendant had filed a motion requesting that she be discharged from the case. The matter was continued to April 15, 2016, for defendant to appear in court.

¶ 30    On April 15, 2016, defendant and counsel appeared in court. Defendant expressed his displeasure with counsel not amending his petition or incorporating his amended petition. The court explained to defendant that his counsel was tasked with making appropriate legal determinations regarding his postconviction petition. The court then passed the case so defendant could confer with counsel and determine whether he wished to proceed *pro se*. When the case

was recalled, defendant elected to proceed *pro se*. Counsel informed the court that she had reviewed defendant's amended petition, was in communication with him, evaluated the issues that he presented and informed him that she would not be amending the petition. Counsel also informed that court that she would not be filing a supplemental petition. The court granted counsel leave to withdraw. Defendant requested the court to treat his amended petition as a supplemental petition. The court granted defendant's request and granted the State motion to withdraw its previously filed motion to dismiss and file another motion to dismiss defendant's supplemental petition.

¶ 31 On June 24, 2016, the State informed the court that it was seeking leave to file a motion to dismiss which addressed "both of the petitions that are before the court." Defendant informed the court that he did not wish to proceed *pro se* and had filed a motion to discharge his counsel because she failed to comply with Rule 651(c). Defendant requested the court to reappoint counsel to "argue the issues that [he] had presented to the court." The court admonished defendant at length about the role of postconviction counsel and that it could not reappoint counsel under the condition that she follow his directives regarding what pleadings to file. The State again withdrew its second motion to dismiss and the case was continued for counsel to appear and defendant to confer with counsel regarding his decision to proceed *pro se*.

¶ 32 On July 8, 2016, after defendant conferred with counsel, the court reappointed counsel to represent him. Counsel informed the court that she reviewed defendant's supplemental petition and requested additional time to determine whether to adopt it.

¶ 33 On September 16, 2016, counsel informed the court that she would adopt defendant's supplemental petition but would not be preparing a new supplemental petition.

¶ 34    The record shows that in a November 7, 2016, letter counsel informed defendant that she had reviewed the issues in his *pro se* amended petition and stood by her decision not to amend or supplement the petition. In the letter, counsel also informed defendant that, per their "communications in court, by mail, and telephone" she would not abandon defendant's issues and would present them in arguing for an evidentiary hearing.

¶ 35    On December 2, 2016, the court granted counsel leave to file a second Rule 651(c) certificate, which counsel did on the same date. The certificate stated as follows:

> "1. I have consulted with the petitioner, Juan Aceves, by phone, mail, electronics means or in person to ascertain his contentions of deprivations of constitutional rights; 2. I have obtained and examined the record of proceedings at the trial and sentencing in this case; 3. I have not prepared a Supplemental Petition for Post-Conviction Relief as the petitioner's previously-filed *pro se* petition for post-conviction relief adequately sets forth the petitioner's claims of deprivation of his constitutional rights."

Counsel also informed the court that she would not be preparing a supplemental petition. The State then recounted the procedural history of the case and informed the court that it had not yet filed a motion to dismiss pertaining to both defendant's initial *pro se* petition and his *pro se* supplemental petition. The case was then continued for the State to file a motion to dismiss.

¶ 36    On the next court date, the State informed the court that it was ready to file a motion to dismiss but that it had received another supplemental postconviction petition from defendant. The State tendered this petition to postconviction counsel, who did not receive the petition from defendant. Counsel asked the court to continue the case so that she could read the new supplemental petition and speak with defendant "in order to comply with [Rule] 651(c)." The

State requested the court to deny defendant leave to file this additional *pro se* supplemental petition, given that defendant was represented by counsel. The court then passed the case and reviewed defendant's *pro se* filing. When the matter was recalled, the court recounted the procedural posture of the case and denied defendant leave to file "any further supplemental post-conviction petitions." The court then granted the State leave to file a motion to dismiss defendant's initial petition and the supplement that the court previously allowed defendant to file. Counsel asked for a short date to respond to the State's motion.

¶ 37    On January 6, 2017, the State filed a motion to dismiss defendant's petitions. The State argued that the petitions were untimely and that defendant's claims were meritless because they were unfounded, waived, and unsupported by affidavits or other evidence.

¶ 38    On February 10, 2017, counsel informed the court that she would not be filing a response to the State's motion and asked the case to be set for argument on the motion. At the hearing on the motion, the court recounted the procedural history of the case. The court asked counsel if she had filed a Rule 651(c) certificate and counsel informed the court that she had. The court also asked counsel if she had spoken to her client and counsel responded: "I have spoken to my client both over the phone and by mail on numerous occasions. I stand on his petition. I believe that he accurately set forth all his allegations in his petition." Counsel then went on to recount the arguments raised in the petition and argued that Diaz, if he was allowed to testify, would have shown that he was being attacked at the time of the shooting and that defendant was acting in self defense to protect Diaz. The court asked counsel if she had a response to the State's motion to dismiss and counsel replied "nothing further." The State then argued that defendant's petition was untimely and without merit. Counsel responded to some of the State's arguments and

pointed out that according to defendant, at the time he made his video recorded statement, he was both mentally and verbally abused and threatened by the officers that they would arrest and charge Gomez, his girlfriend, who was pregnant at the time. Counsel pointed out that Gomez was now deceased and argued that had trial counsel spoken with her at the time of trial, she would have informed trial counsel that police threated to take her children away from her if she did not testify against defendant. The matter was then continued for the court to consider the State's motion to dismiss.

¶ 39    On July 21, 2017, the court granted the State's motion and dismissed defendant's petition. In doing so, the court noted that, notwithstanding the untimeliness of the petition, it would address the claims on the merits. The court pointed out that defendant failed to support his claims with affidavits or other documentation and that he did not establish that his constitutional rights were violated. On the same date, defendant filed a notice of appeal. On August 18, 2017, defendant filed a *pro se* motion to withdraw the notice of appeal and a motion to reconsider the court's dismissal of his petition. The court denied the motion to reconsider on September 11, 2017, and this court granted defendant leave to file a late notice of appeal on November 14, 2017.

¶ 40    On appeal, defendant contends that the court erred in dismissing his petition because he did not receive a reasonable level of assistance from his postconviction counsel.

¶ 41    The Act sets forth a procedure under which a criminal defendant may assert his or her conviction was the result of a substantial denial of his or her rights under the United States Constitution, the Illinois Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The Act contemplates a three-stage proceeding, which is initiated by the filing of a petition. *People v.*

*Johnson*, 2018 IL 122227, ¶ 14; 725 ILCS 5/122-1(b) (West 2016). The petition must "clearly set forth the respects in which [the defendant's] constitutional rights were violated." 725 ILCS 5/122-2 (West 2016). The defendant must attach affidavits, records, or other evidence to support his or her allegations or shall state why same is not attached, but the petition need not contain argument or citation and discussion of pertinent authority. *Id.*

¶ 42    During the first stage, the circuit court must independently evaluate the petition and determine whether it meets the low standard of pleading sufficient facts to state an arguably constitutional claim. *Hodges*, 234 Ill. 2d at 9-10. The court may dismiss the petition only if it is frivolous and patently without merit. *Id.* at 10. A petition is frivolous and patently without merit when it is based on an indisputably meritless legal theory or a fanciful factual allegation. *Id.* at 16. "[A]n indisputably meritless legal theory is one which is completely contradicted by the record," and "[f]anciful factual allegations include those which are fantastic or delusional." *Id.* at 16-17.

¶ 43    If the court does not dismiss the petition within 90 days, the matter is advanced to the second stage at which the court may appoint counsel to represent defendant, and the State may either move to dismiss or answer the petition. *Johnson*, 2018 IL 1222267, ¶¶ 14-15. At the second stage, the court must determine whether the petition and accompanying documentation sets forth a substantial showing of a constitutional violation. *Id.* ¶ 15. If no such showing is made, the petition is dismissed. *Id.*

¶ 44    In this court, defendant does not challenge the dismissal of his petition on the merits. Rather, he requests that we remand his case to the circuit court for further proceedings because his postconviction counsel provided unreasonable assistance by failing to amend his petition;

attach supporting documentation or explain the absence thereof; and avoid procedural default by adequately developing his claim that he was not culpably negligent for the untimeliness of the petition. By focusing exclusively on this issue, defendant has forfeited for review the substantive claims actually raised in the petition. *People v. Cotto*, 2016 IL 119006, ¶ 49.

¶ 45    When a postconviction petition is dismissed without an evidentiary hearing, the standard of review is *de novo. People v. Suarez*, 224 Ill. 2d 37, 42 (2007) (citing *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998)).

¶ 46    There is no constitutional right to counsel in postconviction proceedings. *People v. Moore,* 189 Ill. 2d 521, 541 (2000). Because the right to counsel in such proceedings is wholly statutory (see 725 ILCS 5/122–4 (West 2012)), petitioners are entitled only to the level of assistance provided by the Act, which has been determined to be a " 'reasonable level of assistance.' " *People v. Turner,* 187 Ill. 2d 406, 410 (1999) (quoting *People v. Owens,* 139 Ill. 2d 351, 364 (1990)). Illinois Supreme Court Rule 651(c) (eff. Feb 6, 2013) "imposes specific duties on postconviction counsel to ensure that counsel provides that reasonable level of assistance." *People v. Kirk*, 2012 IL App (1st) 101606, ¶ 18. To that end, Rule 651(c) requires that the record in postconviction proceedings demonstrate that counsel "has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Counsel's duty is to shape defendant's claims into proper legal form and present them to the court. *People v. Perkins*, 229 Ill. 2d 34, 44 (2007). An adequate

presentation of defendant's claims necessarily includes attempting to overcome procedural bars that result in dismissal of a petition if not rebutted. *Id.*

¶ 47    That said, "postconviction counsel is not required to amend a defendant's *pro se* postconviction petition [citation] but, rather is only required to investigate and present the defendant's claims [citation.]" *Kirk*, 2012 IL App (1st) 101606, ¶ 21. That is, although postconviction counsel "*may* conduct a broader examination of the record [citation] and may raise additional issues" that were not raised in the *pro se* petition, "there is no obligation to do so." (Emphasis in original.) *People v. Pendleton*, 223 Ill.2d 458, 476 (2006).

¶ 48    "Compliance with Rule 651(c) may be shown by the filing of a certificate representing that counsel has fulfilled her duties." *Kirk*, 2012 IL App (1st) 101606, ¶ 19 (citing *People v. Perkins*, 229 Ill.2d 34,  50 (2007). "The filing of the certificate gives rise to the presumption that the defendant received the required representation during second-stage proceedings [citations]; however, this presumption may be rebutted by the record [citation.]." *Id.* "It is defendant's burden to overcome this presumption by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c)." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 49    Here, postconviction counsel filed a Rule 651(c) certificate. Thus, the presumption exists that defendant received the representation required by the rule. In order to overcome this presumption, defendant argues that the totality of the record demonstrates that counsel utterly failed to comply with Rule 651(c). In support of this argument, defendant argues that postconviction counsel acted unreasonably when she did not make the amendments necessary to overcome a petition's untimeliness. He also asserts that counsel's decision not to amend the

petition or include an affidavit from Diaz to support the claims in the petition amounted to unreasonable assistance. Defendant further maintains that it was unreasonable for postconviction counsel not to file a written reply to the State's motion to dismiss or orally argue against the State's motion.

¶ 50     After carefully reviewing the record at bar, we find that defendant has failed to overcome the presumption that postconviction counsel provided reasonable assistance during second-stage proceedings. The record shows that counsel: communicated with defendant to ascertain his claims; reviewed the record of the proceedings at trial; reviewed defendant's petition; investigated potential witnesses; and argued for defendant's petition and against the State's motion to dismiss. The record shows that on multiple court dates, counsel informed the court that she was investigating defendant's claims and that there were witnesses, some of whom resided outside of the state, that she needed to locate. On August 28, 2015, counsel informed the court that she had completed her investigation in this case, but that she did not have a chance to speak with defendant nor to comply with Rule 651(c). Counsel told the court that she had arranged a phone call with defendant and requested a continuance to comply with Rule 651. Subsequently, counsel and defendant appeared in court together and conferred about the case. After briefly discharging counsel, defendant again conferred with counsel on a later date and the court reappointed counsel.

¶ 51     After defendant *pro se* filed a supplemental petition, counsel informed the court that she reviewed the supplemental petition and requested additional time to determine whether to adopt it. On September 16, 2016, counsel informed the court that she would adopt defendant's supplemental petition but would not be preparing a new petition. At the hearing on the State's

motion to dismiss, the court asked counsel if she had spoken to her client and counsel responded: "I have spoken to my client both over the phone and by mail on numerous occasions. I stand on his petition. I believe that he accurately set forth all his allegations in his petition." Counsel then went on to recount the arguments raised in the petition and argued in support of the claims raised therein. After the State argued to dismiss the petition, counsel responded to some of the State's arguments and pointed out that according to defendant, at the time he made his video recorded statement, he was both mentally and verbally abused and threatened by the officers that they would arrest and charge Gomez, his girlfriend, who was pregnant at the time. Counsel pointed out that Gomez was now deceased and argued that had trial counsel spoken with her at the time of trial, she would have informed trial counsel that police threated to take her children away from her if she did not testify against defendant. Given this record, defendant has not met his burden to rebut the presumption that postconviction counsel provided reasonable assistance and satisfied her duties under Rule 651(c).

¶ 52    In reaching this conclusion, we are not persuaded by defendant's argument that postconviction counsel provided unreasonable assistance because she failed to amend his petition; attach supporting documentation or explain the absence thereof; and avoid procedural default by adequately developing his claim that he was not culpably negligent for the untimeliness of the petition. As mentioned, counsel is not required to amend a defendant's *pro se* postconviction petition but, rather is only required to investigate and present defendant's claims. *Kirk*, 2012 IL App (1st) 101606, ¶ 21. That is, although postconviction counsel may conduct a broader examination of the record and may raise additional issues that were not raised in the *pro se* petition, there is no obligation for counsel to do so. *People v. Pendleton*, 223 Ill.2d 458, 476

(2006). As a matter of fact, ethical obligations prevent counsel from doing so if the claims are frivolous. *People v. Malone*, 2017 IL App (3rd) 140165, ¶ 10. If the claims are frivolous, postconviction counsel has the option of standing on the allegations in the *pro se* petition or to withdraw as counsel. *Malone*, 2017 IL App (3rd) 140165, ¶ 10 (counsel may stand on the *pro se* petition where she is unable to corroborate the claims with affidavits or other evidence; she need not withdraw as counsel).

¶ 53 Defendant nevertheless argues that counsel should have attached affidavits (namely from Diaz) to support the claims in the petition. However, the record shows that counsel conducted a thorough investigation, including tracking down witnesses, before she ultimately determined that defendant's *pro se* petition adequately presented his claims.

¶ 54 Similarly, although amendment of an untimely *pro se* postconviction petition to allege lack of culpable negligence is within the scope of Rule 651(c) (*Perkins*, 229 Ill. 2d at 50), the rule does not mandate that postconviction counsel respond to the State's motion to dismiss. Again, counsel may choose to "stand" on defendant's petition when it adequately presents his claims and arguments. *Malone*, 2017 IL App (3rd) 140165, ¶ 10. In any event, the record here shows that the circuit court dismissed defendant's petition on the merits, not timeliness grounds. See *Perkins*, 229 Ill. 2d at 44 (An adequate presentation of defendant's claims necessarily includes attempting to overcome procedural bars that *result* in dismissal of a petition if not rebutted) (emphasis added).

¶ 55 Finally, we are not persuaded by defendant's reliance on *People v. Johnson*, 154 Ill. 2d 227 (1993), *People v. Turner*, 187 Ill. 2d 406 (1999) and *People v. Treadway*, 245 Ill. App. 3d 1023 (1993). In those case, the reviewing courts found postconviction counsel's representation to

be unreasonable. However, in each of those cases counsel failed to file a Rule 651(c) certificate, and therefore the question before those courts was whether the record affirmatively showed compliance with the rule. See *People v. Wallace*, 2016 IL App (1st) 142758, ¶ 28. Here, on the other hand, counsel did file a Rule 651(c) certificate and this court is tasked with determining whether the record positively rebuts the presumption that defendant received the representation required by the rule. *Id.*; *Profit*, 2012 IL App (1st) 101307, ¶ 19. As such, *Johnson*, *Turner*, and *Treadway* are inapposite to this case.

¶ 56    In sum, defendant has failed to rebut the presumption that postconviction counsel complied with Rule 651(c) and provided reasonable assistance. Therefore, we find that counsel provide reasonable assistance and accept counsel's representation that she reviewed the record and could not or did not need to make any amendments to the petition to adequately present defendant's claims. *Malone*, 2017 IL App (3rd) 140165, ¶ 11.

¶ 57    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 58    Affirmed.