2022 IL App (2d) 190968-U
No. 2-19-0968
Order filed February 25, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14-CF-258 |
| JUAN CALDERON, | ) ) ) | Honorable Charles E. Petersen, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court.
Presiding Justice Bridges and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) Defendant raised in his postconviction petition, and thus did not forfeit, his argument on appeal that his trial counsel was ineffective for failing to object to the victim's testimony on cross-examination that defendant abused her on occasions besides the charged incident. (2) Defendant forfeited his argument in his reply brief that the victim's testimony about the other abuse was nonresponsive to trial counsel's questions and, thus, that counsel could have objected to it. (3) Regardless of whether trial counsel's performance was deficient, defendant has not shown that the victim's testimony about the other abuse prejudiced him.

¶ 2    Defendant, Juan Calderon, appeals the summary dismissal of his petition under the Post-

Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)).  He claims that his petition

asserted the gist of a claim that he was denied the effective assistance of counsel where his trial

counsel failed to object to the victim's testimony, which counsel himself elicited, that defendant had struck the victim on prior occasions. We affirm, holding that defendant's petition did not present an arguable claim that defendant was prejudiced by counsel's alleged omission.

¶ 3                                    I. BACKGROUND

¶ 4    An indictment charged defendant with multiple offenses against M.C. occurring on February 15, 2014. Counts I and II charged aggravated criminal sexual assault (bodily harm) (720 ILCS 5/11-1.30(a)(2), 11-1.20(a)(1) (West 2014)). Count I alleged digital penetration of M.C.'s vagina and count II alleged digital penetration of her rectum. Counts III, IV, and V charged criminal sexual assault (use or threat of force) (720 ILCS 5/11-1.20(a)(1) (West 2014)). Counts III and IV alleged the same acts of penetration as counts I and II, while count V alleged that defendant "made M.C. perform an act of fellatio on him." Count VI charged aggravated domestic battery (strangulation) (720 ILCS 5/12-3.2, 3.3(a-5), (West 2014)). Counts VII, IX, and X charged domestic battery (720 ILCS 5/12-3.2(a) (West 2014)). Count VIII charged unlawful restraint (720 ILCS 5/10-3(a) (West 2014)).

¶ 5    On the first day of defendant's jury trial, the State dismissed counts III, IV, VIII, IX, and X.

¶ 6    M.C., testifying through an interpreter, stated that she met defendant in June or July of 2013 and married him that September. The marriage was troubled from the start. On February 15, 2014, she decided to meet with defendant to talk about a divorce. Because he had threatened her in the past, M.C. intended to meet defendant in a public place.

¶ 7    The two agreed that M.C. would pick defendant up in her truck at a convenience store. When they met, defendant said that he wanted to go to a liquor store to cash a check. At the store, he bought alcohol. He then insisted that he drive. They argued as defendant drove. They stopped

at a park, where defendant grabbed M.C. by the hair and demanded oral sex. M.C. complied. Defendant called her an "illegal whore" and told her that she was getting what illegals deserved. Eventually, they left the park and drove to a gas station. They remained there for at least an hour and continued to argue. At some point, defendant backhanded M.C. across her face. When she tried to calm him, he repeatedly hit her in the face. When she tried to push him away, he bit her left elbow. As they struggled, defendant placed his hands around her neck and squeezed. As she was turned away from him, trying to escape the truck, he grabbed the back of her pants—she described them as loose jeans—and pulled them down to her thighs. He then forced several of his fingers into her rectum and at least one of his fingers into her vagina. She fled the truck and asked a customer at the gas station to help her.

¶ 8    On cross-examination, defense counsel questioned M.C. about disparities between her testimony and statements she made to the police on February 18, 2014. During that questioning, the following exchange occurred:

> "Q. *** [Y]ou arrived at the gas station, right?
>
> A. Yes.
>
> Q. You told the officers on February 18th that's the first time he slapped you?
>
> A. [Defendant] had already hit me before.
>
> Q. When did he hit you before?
>
> A. When we lived together he was hitting me constantly.
>
> Q. I'm not asking questions about that.
>
> [ASSISTANT STATE'S ATTORNEY]: I'm going to object. That was the question he asked.
>
> THE COURT: Sustained.

[DEFENSE ATTORNEY]: For the last ten minutes I've been asking you questions about your statement about February 18th.

A. Yes.

Q. And you testified already with the State asking you questions. Do you remember that?

A. Yes.

Q. On the night of February 15, 2014, prior to the gas station, when did [defendant] hit you?

A. When he let me go, after he made me have sex with him, that was the first hit, on my chest.

Q. What about the time he hit you in the face?

A. That was when we got to the gas station."

¶ 9 M.C. agreed on cross-examination that she was not a legal resident. She admitted that a social worker had informed her of the "U visa" program. M.C. was aware that a U visa would allow her to remain in the country. Asked if her purpose for testifying was to obtain a U visa, M.C. answered, "I'm not looking for that. It's just simply justice."

¶ 10 South Elgin police officer Victor Wiacek testified that, on February 15, 2014, he was dispatched to a gas station in South Elgin. Defendant was standing outside the station's store. A group inside the store was clustered around a crying woman. Her clothing was in disarray, her mouth was bleeding, and her face was bruised. She also had a bite mark on her elbow. A bystander told Wiacek that defendant had hurt the woman. Wiacek placed defendant in the squad car while he investigated the incident. Wiacek noticed that defendant's fly was fully unzipped.

¶ 11    South Elgin police detective Brian Polkinghorn testified that he interviewed defendant in the early morning of February 16, 2014. Defendant claimed that he and M.C. had argued while she was driving and that she hit him. He hit her back in self-defense. As to the bite mark on M.C.'s arm, defendant believed that M.C. had bitten herself to get him into trouble. Defendant denied that he had any sexual contact with M.C. the previous night (February 15). Polkinghorn testified that, as he and defendant exited the interview room, they encountered Wiacek, who asked defendant why his fly was fully unzipped when he was at the gas station. Defendant then admitted that M.C. had touched his penis, he had touched her vagina, and she had given him oral sex.

¶ 12    The jury found defendant guilty on counts I and II (aggravated criminal sexual assault—digital penetration of vagina and rectum) and VII (domestic battery). The jury found him not guilty on counts V (criminal sexual assault—penis in mouth) and VI (aggravated domestic battery—strangulation).

¶ 13    On direct appeal, defendant argued three points: "(1) the prosecutor's rebuttal argument was improperly inflammatory and denied him a fair trial; (2) the State failed to prove a nexus between the sexual assaults and [M.C.'s] injuries, such that his convictions should be reduced to criminal sexual assault; and (3) the State argued only one form of bodily injury and thus under one-act, one-crime principles, only one sexual assault could be aggravated." *People v. Calderon*, 2018 IL App (2d) 160185-U, ¶ 2. We rejected all three points and affirmed. *Calderon*, 2018 IL App (2d) 160185-U, ¶¶ 2, 51.

¶ 14    On July 26, 2019, defendant filed a *pro se* postconviction petition under the Act, raising multiple claims of ineffective assistance of trial and appellate counsel. As relevant in this appeal, defendant asserted that (1) his trial counsel "was ineffective for failing to object to evidence from

[M.C.] that [defendant] had beaten her before" and (2) his appellate counsel was ineffective for failing to argue that trial counsel was ineffective in that regard.

¶ 15    On October 22, 2019, the trial court summarily dismissed the petition at the first stage of postconviction proceedings. See 725 ILCS 5/122-2.1(a)(2) (West 2018). Defendant filed a timely notice of appeal.

¶ 16                                    II. ANALYSIS

¶ 17    Defendant argues that the trial court erred in dismissing his claim that (1) his trial counsel was ineffective for failing to object to M.C.'s testimony that defendant had beaten her before February 15, 2014, and (2) his appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness. Defendant argues that trial counsel's failure to object was unreasonable because M.C.'s testimony constituted other-crimes evidence, which under Illinois law is inadmissible except in narrow circumstances. See Ill. R. Evid. 404(b) (eff. Jan. 1, 2011).

¶ 18    The Act provides a three-stage process for the adjudication of a postconviction petition. *People v. Buffer*, 2019 IL 122327, ¶ 45. At the first stage, the trial court determines whether the petition is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). Because most petitions are drafted at the first stage by defendants with little legal knowledge or training, the threshold for survival is low. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). "The allegations of the petition, taken as true and liberally construed, must present the gist of a constitutional claim." *People v. Hatter*, 2021 IL 125981, ¶ 24. "[T]o survive summary dismissal, a petitioner is only required to include a limited amount of detail and need not present formal legal arguments or citations to legal authority." *Hatter*, 2021 IL 125981, ¶ 24. We review *de novo* the summary dismissal of a postconviction petition. *Hatter*, 2021 IL 125981, ¶ 24.

¶ 19    We review ineffective-assistance-of-counsel claims under the familiar principles of *Strickland v. Washington,* 466 U.S. 668 (1984). "To prevail on a claim of ineffective assistance under *Strickland*, a defendant must show both that counsel's performance 'fell below an objective standard of reasonableness' and that the deficient performance prejudiced the defense." *Hodges*, 234 Ill. 2d at 17 (quoting *Strickland*, 466 U.S. at 688). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Strickland*, 466 U.S. at 694. *Strickland* explained:

"It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, [citation] and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Strickland*, 466 U.S. at 693.

¶ 20    Claims of ineffective assistance of appellate counsel are likewise evaluated under the *Strickland* standard. *People v. Enis*, 194 Ill. 2d 361, 377 (2000).

"A defendant who claims that appellate counsel was ineffective for failing to raise an issue on appeal must allege facts demonstrating that such failure was objectively unreasonable and that counsel's decision prejudiced defendant. If the underlying issue is not meritorious, then [the] defendant has suffered no prejudice." *Enis*, 194 Ill. 2d at 377.

¶ 21    In *Hodges*, the supreme court provided the following guidance for applying *Strickland* at the first stage of postconviction proceedings under the Act:

"a petition alleging ineffective assistance may not be summarily dismissed if (i) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) it is *arguable* that the defendant was prejudiced." (Emphases added.) *Hodges*, 234 Ill. 2d at 17.

¶ 22    Notably, if a reviewing court can dispose of an ineffectiveness claim on the basis that the defendant suffered no prejudice, it need not address whether counsel's performance was deficient. *E.g.*, *People v. Schnoor*, 2019 IL App (4th) 170571, ¶ 57.

¶ 23    We begin by addressing the State's claim that defendant has forfeited his ineffectiveness argument because it is different from the ineffectiveness argument he raised in his petition. See *People v. Jones*, 213 Ill. 2d 498, 505 (2004) (a defendant may not raise for the first time on appeal a claim that was not brought in the postconviction petition). The State construes defendant's petition as claiming that trial counsel was ineffective for failing to object to M.C.'s testimony about his prior abuse of her. Defendant departs from that position, according to the State, by arguing on appeal that trial counsel was ineffective for *eliciting* M.C.'s testimony about the prior abuse.

¶ 24    We reject the State's characterization. In our view, the thrust of defendant's argument on appeal is—consistent with his petition—that trial counsel was ineffective for failing to object to M.C.'s testimony. In his opening brief, defendant quotes the pertinent section of defendant's cross-examination of M.C. (*supra* ¶ 8) and then states: "At no point did trial counsel *object* to the admission of this testimony [from M.C.] ***. This was arguably unreasonable." (Emphasis added.) Proceeding to develop an argument for that conclusion, defendant first notes that "[t]he rules of evidence prohibit the use of evidence that the defendant had committed other crimes when its only relevance is to show the defendant's propensity to commit the charged offense." Applying this principle, defendant contends  that M.C.'s testimony to prior instances of abuse was

inadmissible because it "was not probative of any issue in this case other than to prove [defendant's] bad character." "As such," defendant continues, "trial counsel should have immediately asked the court *to stricken* [*sic*] *this testimony* and tell the jury to disregard it. Trial counsel's failure to do so was at least arguably deficient." (Emphasis added.) Defendant continues in the next paragraph:

> "Likewise, it is at least arguable that appellate counsel should have raised this issue on appeal. For the reasons just stated, by eliciting M.C.'s testimony regarding inadmissible other crimes evidence, *then failing to object* or ask the court to strike that testimony, it was at least arguable that trial counsel's performance was objectively unreasonable." (Emphasis added.)

¶ 25 In his reply brief, defendant remarks that, in his opening brief, he "argued that his post-conviction claim that his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for *failing to object* to other crimes evidence had an arguable basis in both law and fact, so his petition should have advanced to second-stage proceedings." (Emphasis added.) Responding to the State's forfeiture argument, defendant states: "To be clear, it is [defendant's] position that by eliciting M.C.'s testimony regarding inadmissible other crimes evidence, then *failing to object* and ask the court to strike that testimony, trial counsel's performance was at least arguably objectively unreasonable." (Emphasis added.)

¶ 26 From this review of his briefs, we conclude that defendant's argument on appeal is that trial counsel was ineffective for failing to object to M.C.'s testimony, not that trial counsel was ineffective for asking the questions that elicited M.C.'s testimony. Thus, we reject the State's claim of forfeiture.

¶ 27    Moving to the merits of defendant's argument, we note that defendant's reply brief evidently seeks to fill a fatal gap in his opening argument.  That argument, as shown, is that trial counsel should have objected to M.C.'s testimony that defendant struck her on prior occasions. The difficulty with this contention, however, is that the testimony was elicited during trial counsel's own examination of M.C.  "A defendant can neither complain of the admission of testimony which was invited by his own tactics at trial [citations], nor object to evidence of another crime where he himself has introduced evidence of that other crime [citations]." *People v. Owens*, 46 Ill. App. 3d 978, 994 (1977).  "If a defendant procures, invites, or acquiesces in the admission of evidence, even though it be improper, he cannot complain."  *Owens*, 46 Ill. App. 3d at 994. Presumably to avoid the application of these principles, defendant's reply brief characterizes M.C.'s testimony of past abuse as "non-responsive," implying that trial counsel was not responsible for that testimony.  Based on the whole of trial counsel's exchange with M.C. (*supra* ¶ 8), when counsel asked, "When did [defendant] hit you before?", counsel meant, "When, during the February 15th incident, did defendant hit you before he slapped you at the gas station?"  Thus, defendant asserts that M.C.'s answer, alluding to prior occasions of abuse, did not fit the question asked.  However, this argument, because it was raised for the first time in defendant's reply brief, is forfeited.  See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).  Forfeiture aside, M.C.'s answer *was* responsive; she reasonably interpreted trial counsel as asking about abuse on prior occasions.

¶ 28    In any event, we need not determine whether trial counsel was arguably ineffective *either* for eliciting the testimony of past abuse *or* for failing to object to it, because there was no arguable prejudice to defendant.  Defendant suggests that M.C.'s testimony that defendant struck her on prior occasions bolstered M.C.'s questionable credibility:

"As evidenced by the acquittals [on some counts], the jury did not believe all of M.C.'s testimony. The jury did not believe M.C. when she testified that she was choked, or when she alleged that she was forced to perform oral sex. The jurors also asked questions about the U-Visa program, indicating they were considering M.C.'s motives. With regard to the most severe charges, M.C.'s allegations have an air of the incredible about them, where she describes having her pants pulled down far enough for digital penetration of both her anus and vagina while she is moving away from the defendant. It is at least arguable that, in the absence of the improper other crimes evidence, the jurors would have acquitted [defendant] of all the charges."

This argument is unpersuasive. If the jury had a concern that M.C. was exaggerating the charged incident with the hope of improving her chances for a U visa or was generally unreliable, her testimony that defendant hit her on prior occasions could not buttress her credibility or make her more sympathetic. Her claim of prior abuse was not inherently more credible than any other part of her testimony. Indeed, if the jury was inclined to believe that she was exaggerating about the incident itself, her allegation of prior abuse would have only increased that impression. To be sure, if *someone else* had testified to the prior abuse, such testimony could have been highly prejudicial, but that is not what happened here. M.C.'s testimony about prior abuse did not undermine confidence in the outcome of the trial.

¶ 29    Since defendant has not shown that trial counsel was arguably ineffective, he has necessarily failed to show that appellate counsel was arguably ineffective for neglecting to argue trial counsel's ineffectiveness. Thus, the trial court did not err in dismissing defendant's petition as frivolous and patently without merit.

¶ 30                                    III. CONCLUSION

¶ 31    For the reasons stated, we affirm the circuit court of Kane County's dismissal of defendant's postconviction petition.

¶ 32    Affirmed.