2023 IL App (1st) 211252-U
No. 1-21-1252
Order filed July 31, 2023

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 C5 50852 |
| | ) | |
| J.M., | ) | Honorable |
| | ) | Margaret M. Ogarek, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held:* Affirmed where the petitioner failed to support his post-conviction claim with affidavits, records, or other evidence or explain their absence.

¶ 2    The Post-Conviction Hearing Act expects incarcerated individuals representing themselves may not have what they need to support their claims. The Act holds petitioners to a low pleading standard by requiring, absent evidence, an explanation. Here, J.M. alleged ineffectiveness of counsel, which one of the prosecutors at trial would corroborate, but attached neither an affidavit from the prosecutor nor explained its absence. While we may infer the reason for the absence of

an affidavit from his counsel, we may not do so for the missing prosecutor's affidavit. This lack of an explanation justifies the trial court's summary dismissal of his petition.

¶ 3                                          Background

¶ 4     J.M. petitioned for post-conviction relief after this court affirmed his convictions for predatory criminal sexual assault and aggravated criminal sexual abuse of his daughter. We recounted the trial evidence of this years-long conduct when deciding the direct appeal.

¶ 5     In his post-conviction petition, J.M. raised 20 claims he saw pervading the prosecution, from the investigation to the trial and the appeal. For example, he claimed "then Cook County State's Attorney Anita Alvarez" had "politically targeted" him, a former police officer, so she would appear "tough on cops." He asserted that a prosecutor had "used subliminal hypnotic techniques to unduly influence the members of the jury." He faulted trial counsel for failing to call witnesses to "vouch for [his] character" and "impugn [his daughter's] character." And he blamed appellate counsel for not raising these issues and others.

¶ 6     On appeal J.M. pursues only one claim:

> Counsel failed to make the court aware of the fact that one of the members of the [j]ury had been sleeping during witness testimonies and laughed it off when I brought it to the attention of State's Attorney Papa, by whose facial expression of horror showed she was disturbed by the information.

¶ 7     The record indicates that Assistant State's Attorneys Michelle Papa and Michelle Condon prosecuted J.M. during a trial over three days. On the first day, the parties selected the jurors. On the second day, the jurors received all evidence, including testimony from four State witnesses and

J.M. On the third and final day, the jurors heard closing arguments, deliberated, and returned verdicts.

¶ 8    J.M. concluded his petition by detailing its preparation. Both trial counsel and the Cook County clerk's office had "refused" his requests for copies of a police report and a medical exam. Because of the COVID-19 pandemic, he had "lost contact" with "several other persons" and did not have their affidavits. (Trial occurred in 2017; his post-conviction petition was filed in 2021.) Finally, he had "been previously informed" that his former police chief had directed the department "not to assist or have any contact" with him. (J.M. attached an affidavit from a person he identified as the current police chief.)

¶ 9    The trial court summarily dismissed the petition in a written order, rejecting all 20 claims, including the sleepy juror claim. The trial court ruled:

> [J.M.] claims a juror was sleepy during trial, and that trial counsel failed to make the [c]ourt aware of such. [Citation.] These bare allegations are unsupported in the file. The [c]ourt must consider the absence of any such claims and absence of such allegations in the post-trial motion for new trial as well as on appeal. The [c]ourt finds there is insufficient evidence for [J.M.]'s contentions.

¶ 10                                    Analysis

¶ 11   J.M. contends that the Act's low pleadings standard and the lack of record facts rebutting his claim call for reversal. He contends that his petition "unequivocally asserts that [trial counsel] became aware that a juror had been sleeping during trial and did nothing[.]" Thus, his petition "present[s] an arguably meritorious claim that he received ineffective assistance because [trial

counsel] failed to address his concerns that a juror had fallen asleep during trial, which in turn denied him his right to an impartial jury."

¶ 12    The State seeks affirmance on several grounds; we address the pertinent ones. The State contends that (i) J.M. "overstate[d]" his claim because he did not allege that he spoke with trial counsel but that trial counsel overheard him speak to Papa; (ii) J.M. "waived" the claim by not including it in his petition; (iii) J.M. "waived" the claim by not personally objecting at trial when he allegedly saw the juror sleeping; and (iv) J.M. failed to corroborate his claim by attaching an affidavit from Papa or explaining why he could not do so.

¶ 13    J.M. replies that the waiver doctrine does not apply when liberally construing his petition. Furthermore, he did not need to object personally, which would be "unreasonable" given the presence of trial counsel and trial counsel's and Papa's alleged notice of his claim. (The State likewise argues that "the decision[] * * * to alert the court to a sleeping juror" is a matter of trial strategy and thus a decision left to trial counsel alone.) Finally, J.M. gives an explanation for not having an affidavit from Papa—as a "*pro se*, indigent, incarcerated petitioner," "no reason [exists] to believe he has access to a computer or internet so as to be able to contact Papa."

¶ 14    Post-conviction proceedings have three distinct stages. *People v. Boclair*, 202 Ill. 2d 89, 99 (2002). At each stage, petitioners bear the burden of showing they qualify for relief. 725 ILCS 5/122-1(a)(1). J.M. appeals from the summary dismissal at the first stage. Generally, trial courts summarily dismiss petitions unless they allege facts showing "the gist of a constitutional claim." See *People v. Allen*, 2015 IL 113135, ¶ 24. This is a low standard; the trial court considers a petitioner's allegations true and construes them liberally unless the record positively rebuts them. *Id.* at ¶ 25 (citing *People v. Edwards*, 197 Ill. 2d 239, 244 (2001)).

¶ 15    Moreover, the trial court should summarily dismiss claims with no arguable basis either in law or fact. "No arguable basis either in law or in fact" means it "is based on an indisputably meritless legal theory or a fanciful factual allegation." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). "Fanciful factual allegations include those which are fantastic or delusional." *Id.* at 17. If the record contradicts a petitioner's legal theory, that theory becomes meritless. *Id.* at 16.

¶ 16    This court reviews the summary dismissal *de novo*, giving no deference to the trial court's ruling. *Id.* ¶ 19.

¶ 17    Considering these standards, we reject the State's effort to construe J.M.'s claim absurdly. J.M. had a right to effective assistance of trial counsel (*Strickland v. Washington*, 466 U.S. 668, 687 (1984)) and to a fair and impartial jury (*Tanner v. United States*, 483 U.S. 107, 126 (1987)). See *People v. Jones*, 369 Ill. App. 3d 452, 455 (2006) (surveying cases on juror inattentiveness). In his petition, J.M. alleged that trial counsel "failed to make the court aware of the fact that one of the members of the [j]ury had been sleeping during witness testimonies[.]" Liberally construed, J.M. attacked trial counsel's failure to alert the court that, amid the testimony, a juror slept. *Allen*, 2015 IL 113135, ¶ 25.

¶ 18    Neither in his petition nor on appeal does J.M. identify the allegedly sleeping juror or when he notified his trial counsel and Papa. And J.M.'s claim could "open the door for [anyone] who will swear, [or] get a relative to swear, that the jurors were sleeping[.]" *People v. Grenko*, 356 Ill. App. 3d 352, 536 (2005). All the same, we must faithfully apply the pleading standards at the first stage to factually thin petitions and take this allegation as true. *Allen*, 2015 IL 113135, ¶ 25. We agree with J.M. that the record does not show whether a juror slept. Consequently, the record does not positively rebut his claim.

¶ 19    We next must consider Section 122-2 of the Act, which requires a petitioner to provide "affidavits, records, or other evidence supporting [the petition's] allegations or . . . state why the same are not attached." 725 ILCS 5/122-2. "[A] petitioner's own affidavit is not sufficient to advance []his petition to the second stage." *People v. Moore*, 2022 IL App (1st) 192290, ¶ 30. Failing to attach corroborating evidence or explain its absence "by itself justifies the petition's summary dismissal." *People v. Collins*, 202 Ill. 2d 59, 66 (2002).

¶ 20    J.M. identified two witnesses in his petition: trial counsel and Papa. In his opening brief, J.M. neither acknowledged failing to support his claim with affidavits nor explained why. As the State noted, J.M.'s "vague" reference to the COVID-19 pandemic and other witnesses does not explain his failure to seek an affidavit from Papa, and the record contains no basis to infer that Papa was a "witness" with whom J.M. "lost contact" during the COVID-19 pandemic. Indeed, in his reply, J.M. confirms as much, arguing he needed "a computer or [the] internet" to initiate contact. Assuming he lacked that access, J.M. fails to explain why we should overlook parts of the record showing that he had access to the mail (having successfully filed his *pro se* petition) and to the address of the State's Attorney office (having successfully served that office with his *pro se* petition).

¶ 21    "We recognize, of course, that requiring the attachment of 'affidavits, records, or other evidence' will, in some cases, place an unreasonable burden upon post-conviction petitioners." *Collins*, 202 Ill. 2d at 68 (quoting, section 122-2 of the Act). In *Collins*, our supreme court explained that claims of ineffective assistance relieve a petitioner from including an affidavit from trial counsel. *Id.*

¶ 22    Still, "[a]s far as we know, our supreme court has not yet applied the rule from *Collins* to any circumstances other than private attorney-client communications." *Moore*, 2022 IL App (1st) 192290, ¶ 28. To be sure, a panel of this court wondered whether the rationale underlying *Collins* might extend to some "allegations of police misconduct, occurring entirely behind closed doors[.]" *Id.* ¶ 28. But, J.M. has offered no reason to apply *Collins*. As alleged by J.M., a juror slept during "witness testimonies," which appeared to "disturb[]" Papa. In other words, J.M. alleged that Papa would corroborate his claim. Thus, we may insist that J.M. honor the Act's low pleading standard by requiring an explanation.

¶ 23    While, as J.M. insists, we will not "assume" that he had access to "a computer or [the] internet," we cannot disregard his duty under the Act. Because J.M. has failed to explain the absence of Papa's affidavit, summary dismissal was proper. See *Collins*, 202 Ill. 2d at 68 (summary dismissal proper where petition lacks corroborating evidence and fails to explain its absence).

¶ 24    Affirmed.